GEORGE P. HORTON and wife, and THE LIFE INSURANCE COMPANY OF VIRGINIA v. THE HOME INSURANCE COMPANY.

(Decided April 26, 1898).

*Action on Fire Insurance Policy—Fire Insurance— Policy —Conditions—Agent— Waiver of Conditions— Evidence—Statute, Construction of.*

1. Where the condition of a fire insurance policy was that it should become void if, with the knowledge of the insured, foreclosure proceedings should be begun or notice given of the sale, by virtue of any mortgage or deed of trust, of any property covered by the policy; and the policy provided that, if the policy should be cancelled or become void, the unearned portion of the premium paid

HORTON *v.* INSURANCE COMPANY.

should be returned; and, in an action on such policy for the loss by fire of property covered thereby, it appeared that on July 5, the trustees under a deed of trust advertised the property for sale, and on August 7—before the sale—the fire occurred; and it also appeared that the insured had no knowledge that the property was advertised for sale until he saw the advertisement in a newspaper some time before the fire, which advertisement the local agent of the Company also saw before the fire; and that the policy was not cancelled and no part of the unearned premium was repaid or tendered to the insured; *Held*, that the liability of the Company for the loss did not cease before the fire by reason of the above recited stipulation.

2. The knowledge of the local agent of an insurance company is, in law, the knowledge of the principal.

3. The conditions in a policy working a forfeiture are matters of·contract and not of limitation and may be waived by the insurer which waiver may be presumed from the acts of the local agent of the Company.

4. When an insurer, knowing the facts, does that which is inconsistent with its intention to insist upon a strict compliance with the conditions precedent of the contract, it will be treated as having waived their performance and the assured may recover without proof of performance.

5. Where an insurance Company, having knowledge that a contingency had happened which gave it the right to cancel its policy, failed within a reasonable time to notify the insured of its intention to do so and also failed to return the unearned portion of the premium; *Held*, that such failure was evidence tending to show a waiver.

6. Policies of insurance, issued by foreign Companies, the applications for which are taken in this State, are to be construed in accordance with the laws of this State (Section 8, Chapter 299, Acts of 1893) notwithstanding Section 6 of the Act of 1893 prescribes that the standard policy adopted by the insurance department of New York shall be exclusively used in this State.

CIVIL ACTION tried before *Starbuck, J.*, and a jury at Fall Term, 1896, of ANSON Superior Court. The facts appear in the opinion. Both plaintiffs and defendant appealed.

*Mr. R. T. Bennett* for the plaintiffs.

*Mr. James A. Lockhart* for the defendant.

DOUGLAS, J.: This is an action brought on a policy of insurance to recover three fourths of the value of a house destroyed by fire. The property belonged to the plaintiff, and was conveyed by deed of trust to certain trustees to secure a bond given to the Life Insurance Company of Virginia. The policy was on its face made payable to The Life Insurance Company of Virginia, mortgagee, and provided that it should be void on several contingencies, among others, "If, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed." It also provided that: "This policy shall be cancelled at any time at request of insured, or by the company, by giving five days notice of such cancellation . . . . If this policy shall be cancelled, or become void, or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal—this company retaining the customary short rate, except that when this policy is cancelled by this company by giving notice, it shall retain only the pro rata premium." On July 5, 1894, the trustees advertised the property for sale, in a weekly newspaper published in the town of Wadesboro, under the deed of trust, and on August 7, 1894, before any sale, the property insured was totally destroyed by fire. No notice of this sale was given by the trustees to the insured or her husband, and they had no knowledge or information that the property would be advertised for sale before they saw the advertisement in the newspaper some time before the fire. The resident agent of

the defendant company testified that he issued the policy; was a regular subscriber of the said paper, and saw the advertisement while it was running through the paper before the fire. No part of the unearned premium was ever repaid or tendered to the insured. It was admitted that the insured had in due time given the notice and sent on proofs of loss according to the provisions contained in the policy. The following issues were submitted to the jury :

1. Did Plaintiff Martha C. Horton have knowledge of the notice of sale under the deed of trust of the property insured, and if so, when was such knowledge acquired ? A. Yes; after the publication of the notice by the trustees, and before the fire, which occurred while said notice was being published.

2. Did W. A. Rose, local agent of the Home Insurance Company, have knowledge of said notice of sale, and, if so, when was such knowledge acquired ? A. Yes; after said publication of notice and before the fire.

3. Did defendant Home Insurance Company waive the breach, if any, by the plaintiffs of the conditions of the policy ? A. No.

4. What was the cash value of the plaintiffs' house at the time of its destruction ? A. Twenty-two hundred and fifty dollars ($2,250).

5. In what sum, if any, is defendant Home Insurance Company indebted to plaintiff, Martha C. Horton, on her policy of insurance ? A. $1,687.50.

The first and second issues were answered by consent; the third was answered under the instruction of the court that there was no evidence of waiver; and the fifth issue was answered by the court as a consequence of the fourth, upon an agreement that the defendant, if liable at all, was indebted to the *feme* plaintiff to the amount

of three fourths of the value of the property as found by the jury.

After the finding upon the fourth issue, the defendant contended that the court should answer the fifth issue "nothing", and moved for judgment on the first and third issues and responses thereto ; the contention of the defendant being that its liability upon the policy had ceased before the fire, by reason of the stipulation which provides that the entire policy, unless provided by agreement entered thereon or added thereto, shall be void if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed. The court refused this motion, and gave judgment for the plaintiff; whereupon the defendant appealed. This brings before us a pure question of law, founded upon the charge of the court, in which we see no error. Admitting the validity of a provision rendering the policy void upon a contingency beyond the control of the assured, the only reasonable construction we can give to it is that it was intended to compel the assured to give notice to the company of any such proceedings or advertisement so that the company could exercise its right to declare the policy void, and return the unearned premium, which it was required to do by the very terms of the policy. But the assured could not be required to give information which she did not possess, and which came to her only in the same manner and through the same means that it came to the agent of the defendant, whose knowledge is in law that of the defendant. It is probable that, as the agent lived in the same town where the newspaper was published, he saw the advertisement before the plaintiff, who lived in a different town.

In any event she has violated no provision of the contract of insurance either in letter or in substance, as the notice of sale *was given without* her knowledge.    If the defendant stands upon the letter of the contract, ignoring the equities of the plaintiff, he must be satisfied with what is given him  by a literal interpretation.    If he demands his full  pound of flesh, he must  take that and nothing more.

We are of opinion  that the judgment  is correct upon the issues as found by the jury, even  in the absence of a waiver.    If, under proper instructions from his Honor, the jury  had  found  that there was  a waiver,  as they might well have done from the evidence, the case would be that much stronger for the plaintiff; but, as the error of the  court consisted in directing  a verdict  upon that issue instead of leaving it to the jury, we cannot assume to say what their verdict would have been.

The correctness of this instruction  is not strictly presented in  this appeal;  but, as  the plaintiff  has directly raised the question in  his own  appeal now  before us, and which  must be  disposed of  in some way,  we will consider the  two appeals  together, so as to  avoid repetition of  the  same citations.    Of course, the plaintiff's appeal was taken simply to secure her exceptions in the event of an  adverse  decision  upon the  points involved herein.    It is rendered useless to her by our view of the case, as its successful prosecution  could result only in a new  trial, which is now neither necessary nor desirable. At the same time, as it raises a question of importance, we think it  better to reaffirm the  repeated decisions of this court.    The court  below  erred in  directing  a verdict upon that issue, as there was  sufficient evidence to go to the jury.    It is  well  settled in this State that the knowledge of the  local agent of an  insurance company

is, in law, the knowledge of the principal; that the conditions in a policy working a forfeiture are matters of contract and not of limitation, and may be waived by the insurer, and that such waiver may be presumed from the acts of the agent. *Argall* v. *Insurance Company*, 84 N. C., 355; *Dibbrell* v. *Insurance Company*, 110 N. C., 193; *Follette* v. *Accident Association* 110 N. C., 377 and in 107 N. C., 240; *Grubbs* v. *Insurance Company*, 108 N. C., 472; *Bergeron* v. *Insurance Company*, 111 N. C., 45. These cases cite numerous authorities which it is unnecessary here to repeat. One further citation will suffice: Wood on Insurance, 496, cited and approved in *Collins* v. *Insurance Company*, 79 N. C., 279, at page 284, says: "When the insurer, knowing the facts, does that which is inconsistent with its intention to insist upon a strict compliance with the conditions precedent of the contract, it is treated as having waived their performance, and the assured may recover without proving performance; and that, too, even though the policy provides that none of its conditions shall be waived except by written agreement . . . . . And such waiver may be implied from what is said or done by the insurer. So, the breach of any condition in the policy, as against an increase of risk or the keeping of certain hazardous goods . . . . . or, indeed, the violation of any of the conditions of the policy, may be waived by the insurer, and a waiver may be implied from the acts and conduct of the insurer after knowledge that such conditions have been broken." So, again, in section 497 : "When other insurance is required to be endorsed upon the policy, if notice thereof is given to the insurer *or his agent* and consent is not endorsed nor the policy cancelled, further compliance is treated as waived, and the

insurer is estopped from setting up such other insurance to defeat its liability upon the policy."

This line of cases should be distinguished from *Alspaugh* v. *Insurance Company*, 121 N. C., 290, where the Court based its judgment expressly upon the ground that the condition whose violation was held to vitiate the policy, was not a mere technicality but of the very essence of the contract, and under the circumstances could not be held to be waived. There, the condition was that the mill should not run later than ten o'clock at night, and, by agreeing to this condition, the insured obtained his insurance for 3 per cent., when he would otherwise have been compelled to pay five and one-half per cent., thus saving nearly half the premium. It would not have been just for the insured to take advantage of the condition, and yet not be bound by it. In the case at bar it would be equally unfair for the defendant to keep the entire premium, and yet cancel the policy in violation of its express terms. When the property was advertised for sale, no loss had occurred, and there was apparently no reason to anticipate a loss. Upon being informed of the notice, the defendant should within a reasonable time have notified the insured of its determination to cancel the policy, and have returned the unearned premium. Its failure to do so was evidence tending to show a waiver.

The powers of a local insurance agent and the relative liabilities of the company are ably discussed and clearly defined by Justice Miller in *Insurance Company* v. *Wilkinson*, 13 Wall., 222, in which he says: "The powers of the agent are *prima facie* coextensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals (citing authorities). An insurance

company establishing a local agency must be held responsible to the parties with whom they transact business, for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal." The vigorous language in the earlier part of the opinion, in which he condemns the conduct of some insurance companies in stimulating their agents to the highest degree of activity in soliciting insurance, and then seeking to avoid responsibility for their acts and representations, is worthy of note as coming from so high a source.

In *Willis* v. *Insurance Company*, 79 N. C., 285, at page 289, Justice Reade, whose clear and incisive opinions have the ring of a bell and the edge of a razor, says: "Insurance contracts are prepared by insurers who have at their command in their preparation the best legal talent and business capacity, and every precaution is taken for their protection. This is made necessary to prevent the frauds of bad men. But, on the other hand, the insured are generally plain men, without counsel or the capacity to understand the involved and complicated writings which they are required to sign, and which in most cases probably they never read. What they understand is, that they are to pay the insurer so much money, and, if they are burnt out, the insurer pays them so much. When, therefore, there has been good faith on the part of the insured, and a *substantive* compliance with the contract on their part, the courts will require nothing more."

The counsel for the defendant called the attention of the Court to Section 6 of Chapter 299 of the Laws 1893, wherein it is provided that "the standard fire insurance policy, as prescribed and set out in Section 121 of the Insurance Law of New York, shall be exclusively used

in this State by all fire insurance companies from and after the first day of May, 1893," and insisted that such a policy should be construed in accordance with the decisions of the State from which it came.     Whatever force there might otherwise be in the suggestion is fully met by Section 8 of the same Act, which reads as follows :   "All contracts of insurance, the application for which is taken within this State, shall be deemed to have been made within this State, and *subject to the laws* thereof."     In the determination of a new question the decisions of other States may be taken as precedents to guide our action, but can never be authorities to reverse the settled ruling of our courts.     These two sections are not inconsistent, and when construed together become clear in their meaning.  The policy is essentially a North Carolina contract, although the *form* thereof may have been borrowed from another jurisdiction.   A suit of homespun is none the less a native production because the pattern by which it was cut came from another State.  ¶It was deemed best to have a *uniform* policy, which would eventually become familiar to our people, and by repeated adjudications acquire a settled meaning.    The New York form was selected because it had been adopted by the largest insurance State in the country, and was the outgrowth of many years of careful and efficient State supervision.    It is none the less a North Carolina contract, solvable under our laws and determinable by our decisions.    The judgment below is affirmed.

Affirmed.

### IN PLAINTIFF'S APPEAL IN SAME CASE.

DOUGLAS, J.:   This is the plaintiff's appeal in the same case that has just been decided on the defendant's

appeal, wherein the judgment of the court below was affirmed. In that opinion we have fully discussed the questions raised on both appeals, and it is, therefore unnecessary to repeat here either the facts or arguments. The judgment below is affirmed, but as the plaintiff prosecuted this appeal in good faith to protect what might have become a substantial right, and as his exception to the ruling of the court below is sustained, he is entitled to his costs,    Judgment is

Affirmed.