V. T. GRABBS *et al.* v. THE FARMERS' MUTUAL FIRE INSURANCE ASSOCIATION OF NORTH CAROLINA.

(Decided December 5, 1899.)

*Fire Insurance—Insurable Interest—Waiver of Conditions by Agent—General Agency—Forfeitures.*

1. An equitable, as well as a legal title constitutes an insurable interest in property.

2. Any person may insure who has an estate in the property, subject to damage or destruction by fire.

3. The knowledge of the local agent of an insurance company is in law the knowledge of the principal. Conditions in a policy working a forfeiture are matters of contract and not of limitation, and may be waived by the insurer, and such waiver may be presumed from the acts of the agent.

4. An implied waiver is in the nature of an estoppel *in pais,* enforceable by any court of equity. An insurance company can not be permitted to knowingly issue a worthless policy upon a valuable consideration.

5. The possession of blank policies and renewal receipts, signed by the president or secretary is evidence of general agency, implying general powers.

6. Forfeitures are not favored in the law, and are not tolerated in equity, where adequate compensation can be made. Insurance contracts, where doubt exists, are construed most favorable to the insured.

Civil Action to recover loss by fire upon contract of insurance, tried before *Shaw, J.,* and a jury, at Fall Term, 1899, of Stokes Superior Court.

The issues, evidence, charge and exceptions by defendant are stated in the opinion.

There was verdict for plaintiff. Judgment according to verdict. Appeal by defendant.

*Mr. J. T. Morehead,* for appellant.

*Messrs. Jones & Patterson,* and *A. M. Stack,* for appellee.

DOUGLAS, J.   This is an action brought upon a policy of insurance, containing the following stipulations: "This entire policy shall be void......if the interest of the insured in the property be not truly stated herein......or if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be building on ground not owned by the insured in fee simple......, and no officer, agent or other representative of this Association shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto."   The defendant contends that these conditions have been violated, inasmuch as V. T. Grabbs, to whom alone the policy was nominally issued, was not sole owner of the property, which stood in the name of the "King's Cabin Farmers' Alliance Tobacco Manufacturing Company," which was not incorporated, and that no waiver affecting the title is endorsed on the policy.   It also claims that the insured forfeited the policy by failing to pay his dues to the Association, which appears to be purely mutual.   The plaintiffs contend that they have not forfeited their membership, and that the Association issued the policy with full knowledge, through its agent, of all material facts connected with the title to the property, thereby waiving the conditions now set up in defense.   The issues and answers thereto, are as follows:

1. Did defendant execute and deliver to V. T. Grabbs the

GRABBS *v.* INSURANCE CO.

contracts of insurance referred to in the pleadings? Answer. "Yes."

2. Did defendant waive the condition in the policy as to the sole ownership of the property by V. T. Grabbs? Answer. "Yes."

3. Are the plaintiffs the owners of the property destroyed as alleged in paragraph 2 of complaint? Answer. "Yes."

4. Did the defendant insure said buildings in the name of V. T. Grabbs for the use and benefit of plaintiffs as alleged? Answer. "Yes."

5. Had V. T. Grabbs forfeited his membership in defendant company at the time of the alleged fire, as alleged in defendant's answer? Answer. "No."

6. Did plaintiffs make proper proof of loss in accordance with the terms of said policy? Answer. "Yes."

7. Did the defendant waive its right to arbitrate the alleged loss under said policy? Answer. "Yes."

8. What damages, if any, are plaintiffs entitled to recover? Answer. "$800, with interest at 6 per cent from 18th April, 1896."

There was evidence tending to establish the plaintiff's contentions on all the issues. The plaintiff Grabbs testified in part as follows: "When Vest brought the policy he told me he would have to issue it in my name; that it could not be done in any other way. I told him it did not belong to me. I don't know that I called off every name. I told him that I was not the sole owner of it; that I was looking after it."

J. L. Vest, a witness for defendant, testified that "he brought the policy to V. T. Grabbs, put the memoranda at the bottom of the policy. I did not waive any conditions of the policy except one entered at the bottom of the policy. I did not know that anyone but Grabbs was the owner of the property; question of ownership was not raised." But on

cross-examination the same witness testified as follows: "I was agent of the company. I went to Grabbs because J. C. Wall had taken a memorandum of the insurance. I don't know whether Wall was agent, he was advertiser and solicitor for defendant company. Grabbs told me some weeks before I delivered the policy he was not the sole owner. I told him he could insure the property in his name. His character is good. I knew these men had built this Alliance factory.

"Wall's business was to solicit insurance for the defendant company, and the memoranda he took had the name, post-office and description of property. I filled out the policy from this memoranda. I got 20 per cent of premium paid by Grabbs. Some weeks before this I was talking to Grabbs as agent of the company, and he told me he was not the sole owner of the property, but had charge of the property. I told him he was the proper party to have it insured. I never knew the names of all the stockholders. I knew J. W. Kruger, Kiger and Grabbs."

Grabbs being recalled, testified, under exception, as follows:

"J. C. Wall came and wanted to insure the property. I told him all we had to insure was the factory, and he went and looked at the factory, and came back and said he could insure it in my name. I told him to whom it belonged. Wall went off with his memoranda, and Vest came in a few days with the policy."

The following is taken from the statement of the case: "Among other things, the Court charged the jury upon the second issue as follows: 'The contract of insurance in this case provides that the policy shall be void if the interest of the insured be other than unconditional and sole ownership, unless the waiver of this condition be endorsed on the policy. The Court charges you that if you believe the evidence in this case, V. T. Grabbs, the insured named in said policy, was

not the sole owner of the property insured, and that the waiver of this condition is not endorsed on the policy, and the plaintiffs can not recover in this action unless the jury further finds from the evidence that the defendant company, through its agent, waived this condition. · As to the waiver, the Court charges you that if you find upon the evidence that V. T. Grabbs, before receiving the policy, honestly, frankly and fully disclosed to the agent of defendant company the real facts in regard to the ownership of said property, and that said Grabbs was informed by said agent that it was proper to take out the policy in his own name, and that said Grabbs was induced to take out said policy in his own name, and to pay the premium thereon, by the assurance of the agent that this was the proper way to do, then the defendant waived the aforesaid condition in his policy, and the jury should answer the second issue, Yes. (Defendant excepted to the above charge.)

" 'The burden is upon the plaintiff to show by preponderance of evidence that the defendant waived said condition, and if the plaintiff has not shown it by a preponderance of the evidence, the jury should answer the second issue, No.'

"Upon the third issue the Court charged the jury that if they found from the evidence that the plaintiffs were members of the King's Cabin Farmers' Alliance Tobacco Manufacturing Company, and composed said company, and that Spainhour and wife executed and delivered to said company the deed offered in evidence, so far as this action is concerned, they had an insurable interest in said property, and were the owners of said property, and they should answer the third issue, Yes. The defendant excepted.

"The Court charged the jury fully upon all the issues, and there was no exception to any part of said charge except as above stated."

We are of opinion that there was no error either in the admission of testimony or the charge of the Court. The deed of Spainhour to the King's Cabin Farmers' Alliance Tobacco Manufacturing Company, made upon a valuable consideration, conveyed at least an equitable title in the land to the individuals composing the partnership. *Murray v. Blackledge,* 71 N. C., 492; *Simmons v. Allison,* 118 N. C., 763, 776; Bates on Partnership, sec. 296; George on Partnership, p. 112. Having thus an equitable, if not a legal, title to the land, they had an insurable interest therein. 1 May on Insurance, secs. 86 and 87; Wood on Fire Insurance, sec. 257, *et seq;* 2 Beach Law of Insurance, sec. 863; Ostrander on Fire Insurance, sec. 60. The last-named author, says, on p. 209: "Any person may insure who has an estate in the property subject to damage or destruction by fire. An insurable interest does not necessarily imply ownership." In the well-considered case of *Berry v. Insurance Company,* 132 N. Y., 49, the Court says: "The rule is well settled that it is not necessary to support an insurance that the assured should have an interest, legal or equitable, in the property destroyed. It is enough if he is so situated with reference to it that he would be liable to loss if it is destroyed or injured by the peril insured against." In this case the legal title to the property was in the son of the assured, with whom the assured had a *verbal* agreement whereby he was to occupy the premises during his life, and in consideration thereof to keep the building insured and in repair, and to pay the taxes. It was held that the insured could recover even if his verbal agreement with his son were void.

In the case before us we think that the plaintiffs had an insurable interest in the property destroyed, and could insure it, with the express or implied assent of the insurer, in the name of their agent or trustee.

This brings us to the question whether the plaintiffs can recover in the face of the stipulations in the policy as to the ownership of the property and the conditions of waiver. We think they can. The plaintiff Grabbs testifies that he fully and candidly informed the agent of defendant company as to the ownership of the property before the policy was issued, and in this he is corroborated by the witness Vest on cross-examination. It is not denied that Vest was the agent of defendant, and, as such, issued the policy. While not shown by the record in this case, it is well known that as a general rule fire insurance policies are issued in a different way from those of life insurance companies. The latter are usually issued directly from the home office, while fire insurance policies are generally sent to the local agent in blank, and are filled up, signed and issued by him. The blanks, while purporting to be signed by the higher officers of the company, usually have their names simply printed thereon in autographic *fac simile.* Under such circumstances, can it be doubted that the policy is really issued by the agent who, for all purposes connected with such insurance, is the *alter ego* of the insurer? That he is, seems too well settled to need citation of authority, and therefore his knowledge is the knowledge of the company. We can only repeat what we have so recently said in *Horton v. Insurance Co.*, 122 N. C., 498, 503 : "It is well settled in this State that the knowledge of the local agent of an insurance company is in law the knowledge of the principal; that the conditions in a policy working a forfeiture are matters of contract and not of limitation, and may be waived by the insurer; and that such waiver may be presumed from the acts of the agent"—citing a number of cases.

The Supreme Court of the United States says, in *Insurance Co. v. Wilkinson*, 13 Wall., 222 : "The powers of the agent

are *prima facie* co-extensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals." As the knowledge of the agent was the knowledge of the company, we have a case where the insurer, with full knowledge of existing facts, received the premium and issued a policy of insurance which it knew would be absolutely void if strictly construed. In justice to the company we must construe that to be a waiver, which would otherwise be a deliberate fraud, such as no court could sanction or permit. Wagering policies are not permitted on the part of the insured; neither can they be allowed on the part of the insurer. We think the rule is well settled that where an insurance company, life or fire, issues a policy with full knowledge of existing facts which by its terms would work a forfeiture of the policy, the insurer must be held to have waived all such conditions, at least to the extent of its knowledge, actual or constructive. It can not be permitted to knowingly issue a worthless policy upon a valuable consideration. An implied waiver is in the nature of an estoppel *in pais,* which might well be enforced by any court of equity under such circumstances.

The conclusion of the opinion in *Berry v. Insurance Company, supra,* from the great insurance State of New York, whose standard policy we have adopted, meets our approval, and is as follows: "This statement fairly gave notice to the agent that the plaintiff was not the owner of the property, and that, as a part of the consideration for its use and possession, he had agreed to insure it. If the defendant desired further information as to the title, it should have requested it, and not having done so, it must be assumed now to have had notice of such facts as it could with reasonable diligence then have ascertained. This evidence justified the finding that the conditions of the policy as to title were waived, and this

conclusion was not weakened by the fact that in the policy delivered there was a condition that no agent had power to waive any of the conditions of the policy, and no notice to or agreement by any agent would be binding on the defendant unless expressed in writing and endorsed upon the policy and signed by the agent. The agents who issued the policy were general agents having authority to make contracts without reference to the home office, and their power to waive conditions in the policy was co-existent with that of the company itself. Conditions which enter into the validity of a contract of insurance at its inception may be waived by agents, and are waived if so intended, although they remain in the policy when delivered." This elaborate opinion cites many authorities which will be found therein. It is needless to say that the expression "general agent" occurring in the above opinion was used in its legal sense as implying general powers, and not in the geographical sense in which it is usually employed by insurance companies. This is clearly shown by a previous decision of the same court in *Carroll v. Insurance Co.,* 40 Barb., 292, holding that the possession of blank policies and renewal receipts, signed by the president or secretary, is evidence of such general agency. See also May on Insurance, sec. 126, on p. 221, and secs. 129, 131, 132, 143; Beach, *supra,* sec. 1069, *et seq;* Wood, *supra,* secs. 383, 384, 386, 388, 390, 391, 392, 393, 400, 401, 402; Ostrander, *supra,* secs. 53, 55; *Insurance Co. v. Wolff,* 95 U. S., 326, 330; *Insurance Co. v. Norton,* 96 U. S., 234, 240; *Insurance Co. v. Raddin,* 120 U. S., 183; *Insurance Co. v. Chamberlain,* 132 U. S., 304. These questions are ably discussed in *Insurance Co. v. McCrae,* 8 Lea., 513, and in the very recent case of *Wholley v. Assurance Co.,* (Mass.), 54 N. E. Rep., 548.

The general policy of the courts in all such cases is well stated by Justice BRADLEY in *Insurance Co. v. Norton, supra,*

on p. 242, where he says for the Court: "Forfeitures are not favored in the law. They are often the means of great oppression and injustice, and, where adequate compensation can be made, the law in many cases and equity in all cases discharges the forfeiture upon such compensation being made. It is true, we held in Statham's case that in life insurance time of payment is material, and can not be extended by the courts against the assent of the company. But where such assent is given, the courts should be liberal in construing the transaction in favor of avoiding a forfeiture." Of a similar nature is the rule now of almost universal acceptance that in construing an insurance contract, where doubt exists, it is the duty of the Court to give such construction as would be most favorable to the insured. Ostrander, *supra*, p. 703; Beach, *supra*, sec. 237; May *supra*, secs. 174, 175; Wood, *supra*, secs. 57, 156; *Insurance Co. v. Coos Co.*, 151 U. S., 452; *Assurance Co. v. Companbia de Moagens do Barreiro*, 167 U. S., 149.

The only remaining exception is to the admission of the testimony of the plaintiff Grabbs as to his statements to J. C. Wall. As Wall was admittedly the soliciting agent of the defendant, and Vest had already testified that he filled out the policy from the memoranda furnished by Wall, we see no error.

We fully appreciate the beneficent purposes and results of insurance in all its forms. It enables many a young man struggling to get a start in life to obtain the necessary credit of which he would otherwise be deprived, and after life's struggle is over, perhaps suddenly ended by some unforeseen accident, it lives after him to provide for those for whom he can no longer provide. It is beneficial equally to the individual and to the community. It encourages habits of thrift and economy as well as self-abnegation by providing a

place for small savings that might otherwise be spent or lost. It shelters the widow and rears and educates the orphan child, keeping him from the cold charity of the world, and better fitting him for the duties of a citizen. It permeates all branches of business, and, by distributing throughout the country the losses of the few, it causes to be lightly borne by the many the burden that would crush the individual. Of course more money is paid in premiums than is returned in losses, as is shown by the large expenses and increasing surplus of the average company, but this can not be avoided. The enormous amounts thus held really in trust for other people, and the sacred nature of that trust, appeal most strongly to the fullest protection of the law, and that protection should be given equally to the insurer and the insured. The extraordinary development of insurance, and its necessary adaptation to the varying and complicated business relations of a progressive age, tax the utmost ability of the courts. But, while different conditions may require the application of different rules, one great principle must be always kept in view, and that is the ultimate object of all insurance. While we should protect the companies against all unjust claims and enforce all reasonable regulations necessary for their protection, we must not forget that the primary object of all insurance *is to insure.* The great majority of the insured never get back their premiums, as they suffer no loss, and therefore the only consideration they ever receive for the payment of their premiums, at least in cases of fire, is the certainty of indemnity for any loss that might have occurred. We can not permit insurance companies by unreasonable stipulations to evade the payment of such indemnity when justly due, and thus defeat the very object of their existence. Such a policy is necessary for the protection equally of the insurer and the insured, as people will continue to insure as

long as they are secure of the indemnity for which they have paid; but when once they begin to feel that they may by some unforeseen technicality be deprived of all benefit from the contract into which they have honestly entered, they will seek some safer place for the investment of their savings. In other words, those companies that promptly and conscientiously fulfill their own obligations are vitally interested in having all others forced up to an equal degree of responsibility. We do not mean to say that contesting a valid claim is in itself morally wrong, as honest differences may arise, as in all walks of life; but we are gratified that in so vast a volume of insurance business so few contested claims should be brought to our attention. The judgment is affirmed.

Affirmed.