MRS. EMMA V. GREEN, ADMINISTRATRIX, *v.* A. C. BIGGS.

(Filed 25 November, 1914.)

1. **Sanitariums for Profit—Negligence of Employees.**

The owner of a private sanitarium receiving sick persons for treatment with the expectation and hope of gain and profit is held to the duty of ordinary care and protection of those intrusted to him, the rule not obtaining in such instances which applies to charitable institutions, for the latter are held responsible only for the exercise of due care in the selection of employees, and not for injuries resulting from their negligence.

2. **Pleadings—Interpretation—Cause Stated.**

A complaint will be liberally construed in plaintiff's favor to ascertain if the facts presented are sufficient to state a cause of action, or if facts sufficient for that purpose can be fairly gathered from it, however inartificially it may have been drawn; and in this action to recover damages for the wrongful death of plaintiff's intestate, who had been received for treatment in defendant's sanitarium, allegations of the complaint are held sufficient, that the intestate was so received by the defendant for hire, when he was in a helpless condition; that he was placed in the upper room of a wooden building, heated by furnace from the basement; that the windows of the room were closed and the health of the intestate was such as to render his exit from the room impossible; that the employee of defendant, whose duty it was to watch the furnace, had been permitted by the defendant to leave the premises without putting another in his place, and in his absence a fire started near the furnace which destroyed the building and burnt the intestate to death.

3. **Pleadings — Variance — Appeal and Error—Objections and Exceptions—Trials—Instructions.**

The objection by the defendant that there has been a variance between the allegations of the complaint and the proof of the plaintiff, in his action, and that recovery has been permitted him upon evidence of an entirely distinct and independent theory than that alleged, must be taken to the evidence when it is offered, and when no objection is then made, an exception to the charge of the trial judge because he stated that phase of the plaintiff's contention is untenable on appeal.

4. **Pleadings—Variance—Evidence—Impeachment—Appeal and Error.**

Where the defendant has not excepted to plaintiff's evidence claimed to be at variance with the allegations of the complaint upon the measure of damages, but has introduced the paragraph of the complaint relating

167—27

thereto as substantive evidence for the purposes of impeachment, he will not be permitted on appeal to rely upon the variance between the allegation and proof for the purposes of obtaining another trial.

APPEAL by defendant from *Lyon, J.,* at March Term, 1914, of ALAMANCE.

This is an action to recover damages for the wrongful death of the plaintiff's intestate, caused, as alleged, by the negligence of the defendant, who is the proprietor of a private sanitarium. The allegations of negligence in the complaint are as follows:

"Second. That plaintiff's intestate, who was her husband, came to his death by the wrongful act, neglect, and default of the defendant on_____ March, 1909, under the following circumstances, towit: The intestate on_____February, 1909, placed himself under the care and treatment of the defendant, who held himself out and advertised to the public as an expert physician and doctor, at his sanitarium in the town of Greensboro, Guilford County and State of North Carolina. That the defendant, on_____February, 1909, received the said J. W. Green, plaintiff's intestate, into his care, custody, and control in his said sanitarium in Greensboro, Guilford County and State of North Carolina, and placed him in an upper room in the building used and occupied by the defendant as a sanitarium, and treated him from day to day for the disease with which the said J. W. Green, plaintiff's intestate, was afflicted, until _____March, 1909, and the defendant was paid for all of the services rendered and was paid $30 in advance for each week's service. The last payment of $30 was paid either on 9 or 10 March, 1909. That plaintiff's intestate was an invalid and unable to wait upon and attend to his personal wants and necessities, and was placed by the defendant in a room upstairs, as aforesaid, and with no one in the room as nurse, attendant, or otherwise. That some time during the night of 10 March, 1909, the building in which the defendant carried on his business as a sanitarium, and in which plaintiff's intestate was placed, was burned and destroyed and plaintiff's intestate was burned to death therein. That the building was heated, as plaintiff is informed and believes, and so alleges, on the night of the fire and before the night for a long time, by fire kept in a furnace in the basement of the building, and the fire was kept burning day and night in order to keep a certain temperature in said building. That this furnace was attended to by a man employed by the defendant, and on the night the plaintiff's intestate was killed by the burning of said building, the defendant expressly permitted the fireman to leave his place of business and his duties there in attending to the furnace and go entirely off the premises of the said sanitarium. That at the time of the fire and on that night there was no one in or about the said building except some ladies and children and the plain-

tiff's intestate. That the fireman's duty was to keep the furnace fires up and act as a watchman to the safety of said sanitarium premises. That the fire which destroyed said sanitarium and burned to death plaintiff's intestate started, as plaintiff is informed and believes, and so alleges, at or near the said furnace, and there being no one there at the time to give the necessary alarm or to extinguish the flames, the wooden building burned rapidly and plaintiff's intestate was burned to death as aforesaid.

"Third. That it was gross negligence on the part of the defendant to place the intestate of the plaintiff, a helpless and invalid man, in an upstairs room, in a wooden building, with a furnace underneath thereof with fire burning therein sufficient to warm a two-story building, with no person to look after it and attend to the said furnace and with no suitable person or nurse to remove the plaintiff's intestate. That the building was a two-story building, with a basement underneath where the furnace was located, and the building had ten or more rooms in it. That the windows of the room in which plaintiff's intestate was placed by the defendant, as plaintiff is informed and believes, and so alleges, were so fixed by screens or other appliances that plaintiff's intestate, in his feeble condition, could not open said screens or appliances and escape the flames; and the door in the room in which plaintiff's intestate had been placed by defendant opened, as plaintiff is informed and believes, and so alleges, into the hallway of the house, and there was no chance of escape that way for one in the feeble condition such as plaintiff's intestate, unless assisted by either nurse or attendant in time. This plaintiff, therefore, alleges that her intestate came to the horrible death of being burned to death by the negligence, wrongful act, and default of the defendant, to plaintiff's damage $10,000."

The defendant demurred to the complaint *ore tenus* upon the ground that it did not state a cause of action. The demurrer was overruled, and the defendant excepted.

The defendant failed to answer, and judgment by default and inquiry was entered against him.

At the succeeding term of court the inquiry of damages was had.

The plaintiff offered evidence tending to prove that the deceased was 64 years old at the time of his death. That he was industrious and of temperate habits, and previous to the time when he went to Greensboro to the sanitarium for treatment, that his health was as good as that of the average man of his age; that previous to that time he did the work on his farm in the way of hoeing, cutting, and any other kind of work; that he had been afflicted with facial neuralgia; that he was taken during the Christmas holidays; that his earning capacity was $300 a year, and his personal expenses were $100 a year; that he was economical, and

did the light farm work himself; that he was suffering from a nerve trouble in his face, something like neuralgia, but that he was up and went to Greensboro alone; that he had had slight attacks of this neuralgia before this time; that outside of this neuralgia in his face, his health was good, and that he was able to attend to his farm and other interests.

There was no objection to this evidence.

The defendant introduced the second paragraph of the complaint.

His Honor charged the jury, among other things:

"The plaintiff contends that her intestate, John W. Green, was 64 years old at the time of his death; that he had been in good health, and that his general health and condition was good at that time, with the exception of neuralgia of the face; contends that his habits of life were good, that he was industrious and temperate, and that his life expectancy was 11.1 years. The mortuary tables have been referred to, which give the life expectancy of a man 64 years old at 11.1 years; but you are not bound by the mortuary tables. In passing upon what his expectancy was, you will take into consideration his life, his habits, his health, and his manner of living, and all the surroundings, and say how long he would have lived but for the accident that caused his death." The defendant excepted.

"The plaintiff further contended that his earning capacity was from $300 to $700 a year; contends that he was the owner of three farms, two of which he rented out, and one he worked himself with the exception of some hired labor that he had in the busy season of the year.

"The defendant contends that the plaintiff's intestate was not in good health; that he was at the time of his death in the hospital, and that according to the plaintiff's complaint in this action he was in a feeble condition and unable to care for himself, and that his life expectancy was not as much as 11.1 years; that owing to his physical condition he could not have expected to live as long as that."

There was a verdict and judgment in favor of the plaintiff, and the defendant appealed.

*No counsel for plaintiff.*
*E. S. Parker, Jr., for defendant.*

ALLEN, J., after stating the case: Two questions are presented by the appeal:

1. Does the complaint state a cause of action?

The principle seems to be generally recognized that a private charitable institution, which has exercised due care in the selection of its employees, cannot be held liable for injuries resulting from their negligence, and the rule is not affected by the fact that some patients or bene-

ficiaries of the institution contribute towards the expense of their care, where the amounts so received are not devoted to private gain, but more effectually to carry out the purposes of the charity.

The rule is otherwise where fees are charged with the expectation and hope of securing gain and profit and the proprietors of institutions of this class are held to the duty of ordinary care in the treatment and protection of those intrusted to them, and are responsible for injuries resulting from failure to perform this duty.

The cases in support of these propositions will be found in the note to *Duncan v. Nebraska Sanatorium Assn.,* A. and E. Anno. Cases, 1913, E 1129.

The defendant is the proprietor of a private institution, maintained for gain and profit, and the sufficiency of the complaint depends, therefore, on whether it alleges actionable negligence.

In passing upon the complaint we must construe it liberally, and "If it can be seen from its general scope that a party has a cause of action or defense, though imperfectly alleged, the fact that it has not been stated with technical accuracy or precision will not be so taken against him as to deprive him of it. . . . If any portion of it, or to any extent it presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose can be fairly gathered from it, the pleading will stand, however inartificially it may have been drawn, or however uncertain, defective, or redundant may be its statements; for, contrary to the common-law rule, every reasonable intendment and presumption must be made in favor of the pleader. It must be fatally defective before it will be rejected as insufficient." *Brewer v. Wynne,* 154 N. C., 467.

When so considered and construed, we are of opinion the complaint states a cause of action.

It alleges that the intestate of the defendant was received into the institution of the defendant for hire; that he was old and helpless; that he was placed in an upper room of a wooden building; that the windows of his room were closed and he could not open them; that the only exit from his room was on the hall; that there was no attendant near him; that the defendant maintained a fire in a furnace under the house, night and day; that he had a watchman employed whose duty it was to watch the fires and protect the premises; that the defendant permitted the watchman to leave the premises and put no one in his place; that the fire which caused his death started at or near the furnace, and there was no one present to extinguish it or to give the alarm; and with these facts admitted, as they are by the demurrer, the jury would have been warranted upon an issue submitted to them in finding that the defendant did not exercise the care of a person of ordinary prudence, and that this was the cause of death.

2. Is the part of the charge copied in the statement of the case objectionable?

The position of the defendant is that the complaint alleges that the deceased was helpless, and that the plaintiff has been permitted to recover damages upon evidence tending to prove that he was of average health.

It is true that a complaint proceeding upon one theory will not authorize recovery upon another entirely distinct and independent theory (*Morse v. R. R.,* 122 N. C., 892), and that proof without allegation is as unavailing as allegation without proof (*McCoy v. R. R.,* 142 N. C., 387); but it is clear from the record that there was no contention in the Superior Court that there was a variance between the allegations and the proof.

The defendant raised no objection to the evidence that the deceased was of average health, and being in and material, it became the duty of the court to state the contentions of the parties arising thereon.

Not only was there no objection, but it also appears that the defendant introduced the second paragraph of the complaint, alleging that the deceased was helpless, as substantive evidence of his physical condition and for purposes of impeachment.

The court was justified in assuming, in the absence of objection and after the defendant introduced the complaint, that the defendant, instead of relying upon the exception to the evidence upon the ground of a variance, preferred to place the plaintiff before the jury under the charge of alleging a cause of action based upon the helplessness of the deceased, and of demanding large damages upon the ground that he was in good health except for neuralgia, and this was doubtless the stronger position; and having had advantage of it, he ought not to be allowed now to change front.

It will also be noted that the evidence of good health related to a period anterior to the time the deceased entered the sanitarium of the defendant.

We find

No error.