R. L. JOHNSON AND EVERETT STROUD, TRADING AS JOHNSON & STROUD, v. RHODE ISLAND INSURANCE COMPANY.

(Filed 4 October, 1916.)

**1. Insurance—Fire, Tornadoes—Policy Contract—Interpretation—Statutes.**

. The rule of construction that a policy of fire or tornado insurance is construed against the insurer and in favor of the insured, when its terms admit of interpretation, applies to the statutory form of fire and tornado insurance policies.

**2. Same—Presumptions—Validity.**

The construction of a contract which will make it legal and binding will be adopted as against one that will not make it so, when the contract would otherwise be susceptible of these two interpretations.

**3. Same—Stipulations—Future Conditions—Performance.**

When a tornado policy of insurance is issued on a building in course of construction, containing a stipulation that the policy is void unless the building were enclosed and under roof, and at the time of issuing the policy the building was not enclosed and under roof, but such had been done before the damages sought in the action had accrued, the stipulation in the policy fixed the time and conditions under which the policy should be valid; and as such had been done at the time of the damage and while the policy was in force, the insurer is liable for its payment.

**4. Insurance — Fire, Tornadoes — Stipulations — Conditions — Principal and Agent—Delivery.**

Where a policy against loss by tornadoes has been delivered by the agent of the insurer on its regular printed form, the agent knowing at the time that the building insured was not roofed and covered, which was required by a printed stipulation in the policy contract, the knowledge of the agent is imputed to his company.

**5. Same—Written Contracts—Parol Evidence.**

Where the authorized agent of an insurance company delivers to the insured a policy against loss by tornadoes, containing stipulations that the building insured shall be roofed and closed in, which the agent knew at the time had not been done, the policy provision that the agent could not vary the terms of the written contract is construed as not applying to conditions existing at the inception of the policy.

**6. Principal and Agent—Evidence—Declarations of Agent.**

Declarations of an agent made after the event and as mere narrative of a past occurrence, are not competent as substantive evidence against the principal.

**7. Evidence—Principal and Agent—Insurance—Records—Corroborative Evidence.**

Where the agent of an insurance company has testified as to certain facts in connection with the delivery of a policy contract sued on, it is competent to introduce the record of the transaction made by him, in corroboration of his testimony.

APPEAL from *Lyon, J.,* at August Term, 1916, of PITT.

This is an action to recover upon two policies of tornado insurance issued by defendant company and alleged to be in force on 3 September, 1913, when a storm partially destroyed the tobacco warehouse alleged to be insured. Policy No. 2105 bears date 5 June, 1913, and Policy No. 2106 bears date 23 June, 1913, and each ran for one year from date. The premium on these policies was $4 each, and they were in the sum of $2,000 each. The policies purported to insure "one-story brick building, with metal roof, and inclosed addition thereto attached, including foundations, plumbing, steam, gas, and water pipes, and all permanent fixtures, occupied as a warehouse." The plaintiffs, for whom the build-

ing was insured, were contractors. Policy 2106 had attached thereto and forming a part thereof a 50 per cent coinsurance clause. The defendant contends that Policy 2105 had a coinsurance clause, but this was denied by the plaintiff.

The defendant contended that neither of the policies was ever in force under the following provisions of the policy, to wit: "This company shall not be liable for loss or damage to buildings or their contents in process of construction or reconstruction, unless same are entirely enclosed and under roof, with all outside doors and windows permanently in place," and "No officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed thereon, or added thereto; and as to such provisions and conditions, no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached to the policy." The warehouse was not enclosed and under roof when the policies were issued, but was at the time of loss.

The defendant pleaded that the policies had been canceled before the loss, and offered evidence in support of its plea.

The defendant excepted to the admission, over objection of the defendant, of statements alleged to have been made by the agent, Wilkinson, after the storm, affecting the company's liability, and alleged to have been made in the presence of the plaintiff Stroud and of the witnesses Monk and Smith.

The statement alleged to have been made in the presence of Stroud was as follows:

"That he (Wilkinson) said he thought the insurance ought to be canceled; that the insurance was canceled, morally, but in the eyes of the law it was in full force, and he didn't think we (plaintiffs) ought to make his company pay the loss"; and the further statement, "That he (Stroud) heard Wilkinson say, after the storm of 3 September, 'I have $4,000 insurance on this building, but morally I do not think my company ought to have to pay; but in the eyes of the law they are in full force.' "

The statement alleged to have been made in the presence of the witness Monk was as follows:

"Monk, I have $4,000 insurance on this building in full force. From the standpoint of merit and principle, I do not feel like my company ought to pay it. Mr. Stroud asked me to cancel that insurance on Friday, but I did not do it. You will get your insurance."

The statement alleged to have been made in the presence of Smith was as follows:

"That the policies were not canceled, but morally the risk would not hold good, as they had been ordered canceled by Stroud."

The agent of the defendant testified to the cancellation of the policies; but this evidence was offered after the evidence introduced by the plaintiffs of the declarations of the agent above set out.

The agent also testified that he failed to attach the coinsurance clause to policy 2105 by mistake; that after its delivery he mailed a coinsurance clause to the plaintiff, sent one to the office at Raleigh, and retained one in his own office, and that he at the time made an entry upon the registry of his office of having done so.

The defendant offered the registry in corroboration of the agent. This was excluded, and the defendant excepted. The coinsurance clause would reduce the amount of the liability of the defendant.

His Honor charged the jury on the seventh issue as follows:

"That is a disputed issue. You have heard the evidence on both sides, and I have given you the contentions on both sides, and it is a question of fact for you to determine. If you find from the evidence that Stroud, one of the plaintiffs, directed the agent to cancel the policies on the 25th of August, and again on the 29th of August, and that the policies were canceled at his direction, by his orders, then you would answer that issue 'Yes,' notwithstanding the fact that the policies themselves were not actually delivered; but if you find, according to the contentions of the plaintiffs, that the policies were not canceled, and that the company treated them as still in force by the declarations of the agent Wilkinson, made after the storm, then you would answer that issue 'No.' "

The jury returned the following verdict:

1. Did the defendant execute and deliver to the plaintiffs its two policies of insurance, Nos. 2105 and 2106, as alleged in the complaint? Answer: "Yes."

2. Did the plaintiffs accept said policies upon condition that the defendant should not be liable for loss or damage to buildings, or their contents, in process of construction or reconstruction, unless same are entirely enclosed and under roof, with all outside doors and windows permanently in place, as alleged in the answer? Answer: "Yes."

3. Was said building, at the time of the injury complained of, in process of construction, and entirely enclosed and under roof, with all outside doors and windows permanently in place? Answer: "Yes."

4. Did Policy No. 2105 have attached thereto, and forming a part thereof, a coinsurance clause? Answer: "No."

5. Had the plaintiffs, on 3 September, 1913, delivered the warehouse described in the policies to J. Y. Monk, the owner thereof, and was the

owner, on said date, in full control and occupation of the same, as alleged in the answer? Answer: "No."

6. If the plaintiffs had delivered the possession of said warehouse to J. Y. Monk, did the defendant company, or its agent, have notice or knowledge of the same before the collection of the premium therefor? Answer: ......

7. Had the plaintiffs, prior to 3 September, 1913, caused the policies in suit to be canceled, as alleged in the answer? Answer: "No."

8. What damage was done to said building by reason of said storm? Answer: "$1,496.80."

Judgment was entered upon the verdict in behalf of the plaintiffs, and the defendant excepted.

*Harding & Pierce for plaintiffs.*
*Albion Dunn for defendant.*

ALLEN, J. The warehouse, covered by the policies of insurance, was not enclosed and under roof at the time the policies were issued, and the defendant bases its motion for judgment of nonsuit upon this fact, contending, as the policies provide that the company shall not be liable for any loss or damage to buildings in process of construction or reconstruction unless the same are entirely enclosed and under roof, that there is no liability on the defendant, although the warehouse was enclosed and under roof at the time of the loss.

The rule of construction prevails almost universally that contracts of insurance are construed against the insurer and in favor of the insured, and this has not been changed by the adoption of a standard form of insurance. *Wood v. Ins. Co.,* 149 N. Y., 385; *Gazzam v. Ins. Co.,* 155 N. C., 338; *Cottingham v. Ins. Co.,* 168 N. C., 265.

In the last case the Court says: "The terms of a policy of insurance are construed against the insurer and in favor of the insured, and this is true although a standard form of policy has been adopted under legislative enactment. *Gazzam v. Ins. Co.,* 155 N. C., 330."

It is also a rule of construction applicable to all contracts that if the language admits of two constructions, one of which is legal and binding and the other not, that the first will be adopted. 6 R. C. L., 839.

The courts also look with disfavor upon forfeitures (*Skinner v. Thomas,* 171 N. C., 98), and the trend of modern authority is that a stipulation in a policy which might avoid it does not have this effect if it in no way contributes to the loss, and if the conditions provided for in the stipulation do not exist at the time of the loss. *Cottingham v. Ins. Co.,* 168 N. C., 264.

In this last case a policy of insurance provided that the policy would be void if the property insured became encumbered by a chattel mortgage, and it was held that the amount of the insurance could be collected

.from the company although the insured had executed a chattel mortgage upon the property, which was, however, canceled before the loss.

If these principles are applied to the clause of the policy under consideration, it would seem that the proper interpretation is that the company was not to be liable until the warehouse was enclosed and under roof, and that when it was enclosed and under roof its liability would attach.

The clause indicates clearly that the company intended to insure a building in process of construction, and the language upon which the defendant seeks to escape liability was only intended to fix the time and the conditions when the defendant would be liable.

This construction gives some force and life to the policies and saves the defendant from the imputation of having issued a worthless policy.

If, however, the stipulation refers to conditions existing when the policy issued, the agent of the company who issued the policies and delivered them to the plaintiffs had full knowledge that the warehouse was not at that time enclosed and under roof, and this knowledge is imputed to the defendant company.

In *Bergeron v. Ins. Co.*, 111 N. C., 47, the Court quotes with approval from May on Insurance, that "Facts material to the risk, made known to the agent (or a subagent intrusted with the business) before the policy is issued, are constructively known to the company, and cannot be set up to defeat a recovery on the policy"; and in *Grabbs v. Ins. Co.*, 125 N. C., 395: "It is well known that as a general rule fire insurance policies are issued in a different way from those of life insurance companies. The latter are usually issued directly from the home office, while fire insurance policies are generally sent to the local agent in blank, and are filled up, signed, and issued by him. The blanks, while purporting to be signed by the higher officers of the company, usually have their names simply printed thereon in autographic *facsimile*. Under such circumstances, can it be doubted that the policy is issued by the agent, who, for all purposes connected with such insurance, is the *alter ego* of the insurer? That he is seems too well settled to need citation of authority, and therefore his knowledge is the knowledge of the company. We can only repeat what we have so recently said in *Horton v. Ins. Co.*, 122 N. C., 498, 503: 'It is well settled in this State that the knowledge of the local agent of an insurance company is in law the knowledge of the principal; that the conditions in a policy working a forfeiture are matters of contract and not of limitation, and may be waived by the insurer; and that such waiver may be presumed from the acts of the agent.' "

The same authorities also support the position that if the defendant issued the policy knowing the conditions existing at the time, it cannot now avoid responsibility on account of those conditions.

Nor does the provision in the policy restricting the power of the agent. to waive conditions and stipulations affect the application of this rule, because those restrictions are generally construed to apply to something that occurs after the policies have been issued, and not to conditions existing at the inception of the policy.

In *Grabbs v. Ins. Co., supra,* the Court approves the statement in *Berry v. Ins. Co.,* 132 N. Y., 49, that "Conditions which enter into the validity of a contract of insurance at its inception may be waived by agents, and are waived if so intended, although they remain in the policy when delivered"; and in *Wood v. Ins. Co.,* which is approved in *Gazzam v. Ins. Co.,* 155 N. C., 336, the Court says: "The restrictions inserted in the contract upon the power of the agent to waive any condition unless done in a particular manner cannot be deemed to apply to those conditions which relate to the inception of the contract when it appears that the agent has delivered it and received the premiums with full knowledge of the actual situation. The principle is not a new one, and has not been shaken by any decisions of our Court since the adoption of the standard policy."

And again, in *Forwood v. Ins. Co.,* 142 N. Y., 387: "It could not be supposed that it intended to deliver to the insured a policy which it knew to be void."

We are therefore of opinion that whether the clause in the policy refers to conditions existing at the time it was issued or not, it was not necessarily fatal to the plaintiff's cause of action that the warehouse was not enclosed and under roof at the time the policies were issued, and that the motion for judgment of nonsuit was properly denied.

We are, however, further of opinion that error was committed which entitles the defendant to a new trial.

The authorities in this State are all to the effect that the declarations of the agent made after the event, and as mere narrative of a past occurrence, are not competent against the principal. *Smith v. R. R.,* 68 N. C., 115; *Rumbough v. Improvement Co.,* 112 N. C., 751; *Morgan v. Benefit Society,* 167 N. C., 265.

This evidence of the declarations of the agent would have been competent if the agent had been first introduced and had testified to the cancellation of the policies, as it would have had the effect of impeaching his evidence, and it may be that the order of the introduction of the evidence would not be fatal; but it further appears that his Honor not only failed to restrict the effect of the evidence, but he gave it the force of substantive evidence in his charge, which, in this particular, is excepted to.

It was also competent for the defendant to introduce the record made by the agent in corroboration of his evidence.

We call attention to the discussion of cancellation, which question will arise upon the new trial, which will be found in *Mfg. Co. v. Assurance Co.,* 161 N. C., 98.

For the errors pointed out, a new trial is ordered.

New trial.