ED BULLARD v. PILOT FIRE INSURANCE COMPANY AND ÆTNA INSURANCE COMPANY.

(Filed 24 January, 1925.)

1. **Insurance, Fire—Policies—Conditions—Waiver—Iron-Safe Clause.**

   The provisions of the "iron-safe clause" in a policy of fire insurance for the preservation of the inventories of the merchandise insured, books, etc., may be waived by the company in accepting premiums thereon, knowing that the same was not being complied with, and make ineffective the further provision that the policy would otherwise be void.

2. **Same—Principal and Agent—Evidence—Declarations.**

   While provisions in a policy of fire insurance may render inadmissible as evidence declarations of an agent and hold the party to the terms

expressed in the printed or written form, the principle does not obtain when the local agent knowing that under the circumstances, inventories, etc., could not be made and kept in accordance with the iron-safe clause, delivered the policy and the company has knowingly collected the premiums thereon, such being in effect a valid waiver of the written stipulations.

### 3. Same—Pleadings—Estoppel.

Where a fire insurance company has waived the requirements of the iron-safe clause provision in its policy of insurance, and the merchandise covered by it has been lost by fire, it is not required that an estoppel be pleaded in order to introduce other and competent evidence of the value of the merchandise thus destroyed, for a recovery in an action on the policy. The difference between a waiver of this character and an estoppel required to be pleaded, pointed out by ADAMS, J.

APPEAL by defendants from *Horton, J.,* at February Term, 1924, of SAMPSON.

On 1 May, 1921, the plaintiff conducted a mercantile business in the town of Roseboro and had his stock of goods insured for the sum of $3,000 in the Pilot Fire Insurance Company, for which he paid a premium of $51; and on 15 September, 1921, he took out a policy in the Aetna Insurance Company for $5,000, for which he paid a premium of $85. On 15 December, 1921, his goods were destroyed by fire, and he thereafter brought suit to recover the amount of the policies.

The defendants admitted the execution of the contract of insurance, each setting up the policy issued by the other company; alleged that the stock of goods was worth not more than $2,400; pleaded the three-fourths liability clause, the inventory clause, the bookkeeping clause, and the iron-safe clause; and alleged the plaintiff's breach of each of these clauses except the one relating to the inventory.

The defendants further alleged that the plaintiff in March, 1921, bought the bankrupt stock of G. P. Cherry at the price of $2,749.09, and for sometime prior thereto had carried insurance in the sum of $5,000 with the Aetna Company and at the time of purchasing this stock borrowed $2,500 from the Coharie Bank, to which he then owed $1,000; that in both companies he carried $8,000 on a stock of goods worth not more than $2,500; and that he had set fire to and burned the insured property for the purposes of collecting the amount of the policies.

The two cases were consolidated and the jury returned the following verdict:

1. Did the plaintiff comply with the provisions contained in the two insurance policies sued on in these actions? Answer: "No."

2. If not, did the defendant after the issuance of said policies have full knowledge and notice of such noncompliance and collect the premiums on said policies and take no steps to cancel said policies on account of such noncompliance? Answer: "Yes."

3. Did the plaintiff burn his stock of goods for the purpose of collecting his policies of insurance, as alleged in the answer? Answer: "No."

4. What was the value of the plaintiff's stock of goods at the time they were burned? Answer: "$10,000."

5. What amount, if any, is plaintiff entitled to recover of the defendants? Answer: "Three-fourths value with interest."

It was agreed that the Aetna Company should be responsible for five-eights and the Pilot Company for three-eights of the amount assessed, if any, in answer to the fifth issue. Judgment, from which the defendants appealed.

*A. McL. Graham, Fowler & Crumpler, Faison & Robinson, and J. Abner Barker for plaintiff.*
*Butler & Herring for defendants.*

ADAMS, J. In the first fourteen exceptions the defendants assign as error the admission of evidence tending to show the value at which several witnesses estimated the stock of goods a short time before the fire, the contention being that the records showing purchases, sales, and shipments cannot be supplied in this way.

The clauses referred to are as follows:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year and, unless such inventory has been taken within 12 calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"2. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

"3. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the premises mentioned in this policy are not actually open for business; or, failing in this, the assured

will keep such books and inventories in some place not exposed to a fire which would destroy the property hereby insured.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The plaintiff introduced an inventory which, according to his testimony, he had taken the first of January, 1921. It showed the total value to be $6,970.79. He testified that his inventory of the Cherry stock amounted to $6,060.95. Also that he had kept his check stubs as a record of cash sales, had paid his bills by checks, and had deposited his receipts in the bank. He offered in evidence a book account which, he stated, covered his credit sales; but his duplicate invoices of purchases during the year were excluded. The verdict shows, however, that the defendant did not comply with all the provisions in the policies.

The "iron-safe clause" in policies of insurance is generally upheld by the courts as a reasonable contract limitation upon the insurer's risk (*Coggins v. Ins. Co.,* 144 N. C., 7); but if the company, knowing the insured has not complied with this provision, collects the premiums and recognizes the validity and binding force and effect of the policy it has issued, it should not be heard to insist upon the introduction of records, the keeping of which it has thus tacitly waived. There is a distinction between waiver and estoppel; but the waiver of a forfeiture, though in the nature of an estoppel, may be created by acts, conduct, or declarations insufficient to create a technical estoppel. 14 R. C. L., 1181, sec. 357; 26 C. J., 281, sec. 352 *et seq.; Argall v. Ins. Co.,* 84 N. C., 355; *Grubbs v. Ins. Co.,* 108 N. C., 472; *Horton v. Ins. Co.,* 122 N. C., 498, 503; *Ins. Co. v. Ins. Co.,* 161 N. C., 485; *Moore v. Accident Assurance Corp.,* 173 N. C., 532; *Paul v. Ins. Co.,* 183 N. C., 159.

But the defendants assert, as their second proposition, that they have not waived the iron-safe clause, that estoppel has not been pleaded, and that no facts are alleged or proved constituting a basis for the second issue.

In regard to the question of estoppel this Court has said: "But if the party seeking the benefit of the estoppel will not rely on it, but will answer to the fact and again put it in issue, the estoppel when offered in evidence to the jury, loses its conclusive character, becomes mere evidence, and like all other evidence may be repelled by opposite proof, and the jury may upon the whole evidence find the truth." *Woodhouse v. Williams,* 14 N. C., 508. Of similar import is *Stancill v. James,* 126 N. C., 190. These and other cases point out the distinction between estoppel as a defense and estoppel as evidence and decide that an estoppel may be introduced as evidence in the absence of a special plea.

However, the principle which applies to the exceptions under discussion is that of waiver. The provision restricting the agent's power to waive conditions does not, as a general rule, refer to or include conditions existing at the inception of the contract, but to those arising after the policy is issued. Conditions which form a part of the contract of insurance at its inception may be waived by the agent of the insurer, although they are embraced in the policy when it is delivered; and the local agent's knowledge of such conditions is deemed to be the knowledge of his principal. *Johnson v. Ins. Co.,* 172 N. C., 142; *Gazzam v. Ins. Co.,* 155 N. C., 336; *Grabbs v. Ins. Co.,* 125 N. C., 395; *Horton v. Ins. Co.,* 122 N. C., 498; *Wilkins v. Suttles,* 114 N. C., 550.

Upon this principle the testimony of the agents, Robinson and Tyson, evidently accepted by the jury, clearly establishes a waiver at the inception of the contract. They testified in substance that they had knowledge of the plaintiff's inventory when the policies were issued. Robinson, when informed that the plaintiff had no iron safe and would not take out the policy if he had to buy one, expressly consented that he should not be required to keep the books in his place of business and should have permission to take them home at night; and Tyson knew that the plaintiff was not qualified to keep a record of purchases and that his bank book was his only record of sales. It was under these conditions that the premiums were accepted and restrained by the defendants and under these conditions forfeiture of the policies for the reasons assigned would be wholly inequitable.

In the next place the defendants insist that by the terms of the contract the policies were to be void if the interest of the insured was other than sole and unconditional ownership; that the plaintiff's title or interest was only that of a partner; and that a prayer for instruction embracing this proposition was refused by the court.

True, the plaintiff testified on the cross-examination that he and his wife were partners when the policies were issued and when the fire occurred; but the plaintiff's sole ownership is alleged in the complaints and not denied in the answers. On the contrary, in each answer the stock of goods is referred to as "owned by the plaintiff," and the defendants neither in the answers nor by way of amendment set up misrepresentation as a defense or in any way formally put the matter in issue. Breach of condition or misrepresentation should be pleaded when relied on as a defense, for proof without allegation is as unavailing as allegation without proof. The fact that the evidence was admitted without objection does not change the nature of the defense set up in the answers. There was no error, therefore, in refusing to give

the instruction which is made the basis of the twenty-first exception. *Lee v. Upton,* 178 N. C., 198; *Green v. Biggs,* 167 N. C., 417; *Abernathy v. Seagle,* 98 N. C., 553; *McLaurin v. Cronly,* 90 N. C., 50; 26 C. J., sec. 704; 14 R. C. L., sec. 591.

In our opinion the merits of the controversy were properly submitted to and determined by the jury, and we find in the record no valid reason to interfere with the judgment.