BROWN, J., dissenting.
This action is for the wrongful cancellation of a life insurance policy, and to recover damages for the failure of the defendant to pay to the plaintiff his pro rata share of a fund created under a special contract.
The following issues were submitted:
1. Did the defendant wrongfully forfeit or lapse policy No. 1706-A for $5,000 issued to the plaintiff, the same being the policy sued on? Answer: "Yes."
2. If so, what damage, if any, is the plaintiff entitled to recover? Answer: "Premiums paid in, with interest."
3. What amount, if any, was the defendant indebted to the plaintiff at the date of the forfeiture or lapse of policy No. 1706-A by reason of the special contract entered into between the plaintiff and defendant. Answer: "$150."
Upon this verdict the court entered judgment in favor of the plaintiff on the second issue for $1,790.58, the same being the amount of payments made by the plaintiff to the defendant, and on the third issue for $150, and interest on both sums. From this judgment both parties appealed.
On 23 November, 1904, the plaintiff took out a policy of $5,000 in the Security, Life and Annuity Company upon the annual *Page 69 
payment of a premium of $104.30. On 20 September, 1912, the defendant, the Jefferson Standard Life Insurance Company, with the consent of the Security, Life and Annuity Insurance Company, entered into a contract with the plaintiff for the performance of the conditions of said policy, it having assumed all the liabilities and contracts of the aforesaid Security, Life and Annuity Company.
It is admitted that the plaintiff made nine annual payments, but being out of the State, he did not pay the premium which fell due on 23 November, 1912, and on 20 December, 1912, sent a check for $25, and by arrangement with the defendant executed what is called the "blue note," which is as follows:
"Pol. No. 1706-a. Mobile, Ala., November 23, 1912.
On or before February 23, 1913, after date, without grace and without demand or notice, I promise to pay to the order of the Jefferson Standard Life Insurance Company sixty-five and 85/100 dollars at home office, Greensboro, N.C. value received, with interest at the rate of six per cent per annum.
This note is accepted by said company at the request of the maker, together with the twenty-five and no/100 dollars in cash, on the following express agreement:
That although no part of the premium due on the 23d day of November, 1912, under policy No. 1706-a issued by the Security, Life and Annuity Insurance Company on the life of George W. Garland, and reinsured by Jefferson Standard Life Insurance Company, has been paid, the insurance thereunder shall be continued in force until midnight of the due date of said note; that if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said Jefferson Standard Life Insurance Company as payment of said premium, and all right under said policy shall thereupon be the same as if said premium had been paid when due; that if this note is not paid on or before the day it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said payee company shall retain said cash as part compensation for the rights and privileges hereby granted, and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made; that said payee company has duly given every notice required by its rule or by the laws of any State in respect to said premium, and in further compensation for the rights and privileges hereby granted the maker hereof has agreed to waive, and does hereby waive, every other notice in respect to said premium or this note, it being well understood by said maker that *Page 70 
said payee company would not have accepted this agreement if any notice of any kind were required as a condition to the full enforcement of all its terms.
GEO. W. GARLAND.
 $ 0.98 65.85 — — — $66.83 11-23."
This was endorsed by the defendant company: "Policy lapsed for nonpayment of this note."
Laws 1909, ch. 884, provides that, "No insurance corporation doing business in this State shall, within one year after default in payment of any premium, installment, or interest, declare forfeited or lapsed any policy hereafter issued or renewed, . . . unless a written or printed notice stating the amount of such premium, interest, installment, or portion due thereon on such policy, the place where it shall be paid, and the person to whom the same is payable has been duly addressed and mailed, postage paid, to the person whose life is insured, or the assignee of the policy, . . . at his or her last known postoffice address in this State," etc.
The court instructed the jury, quoting the above statute, and reciting the evidence. "The court instructs the jury that, under the law in North Carolina, it is the duty of the insurer to notify the insured of any premium or portion of premium or interest on such portion, of the date when said premium, portion, or interest thereon, is due, and state in said notice, which shall be mailed at the expense of the insurer to the last known address of the insured that unless said portion or interest thereon is paid on or before the date mentioned in said notice, that said policy will be lapsed or canceled; that the only notice purporting to be given of the portion of the premium the defendant alleges to be due by the plaintiff in this case was mailed, not to the last address in this State of the plaintiff, but was mailed to Montgomery, Alabama, and the court instructs the jury that, under the law, such notice was not properly made. The notice has been introduced in evidence, and the court instructs the jury that said notice does not comply with the terms of the statute of 1909, in that it does not notify the plaintiff that his policy will be lapsed or canceled unless the same is paid on or before the date given in said notice, and, therefore, the court instructs the jury that any lapse or cancellation of the policy by reason of such notice was wrongful and that such lapse or cancellation was a wrongful cancellation. I modify that instruction, gentlemen, by stating again, if, without notice, the plaintiff procured the extension of time by reason of the execution of the blue note offered in evidence, that then such notice would not be *Page 71 
required, and by the execution of the note, if he did execute it, he waived the notice; but that is all predicated, gentlemen, upon the fact that you must find that the defendant did not owe the plaintiff a sufficient amount to pay the premium, by reason of the special contract." The defendant excepted. The jury must have found with the plaintiff's contention, as it answered the first issue "Yes," that the policy was wrongfully canceled.
On 22 July, 1913, the defendant wrote to plaintiff at Salisbury, N.C.:
"Re Policy 1706-A.
DEAR SIR: — Please let us have your check for $21.43 covering interest due and accrued on loan in connection with your above numbered policy to the next anniversary date. This is very important, and we will appreciate your prompt attention." _________________________________"
In August or September, 1913, the plaintiff tendered payment of the balance due on the premium to the home office company, which was refused, it claiming that the policy was forfeited.
The defendant rests his contentions on two points:
1. That the Act of 1909 was passed subsequent to the original insurance, which was made in 1904. But the reinsurance with the defendant company was thereafter in August, 1912, and by the terms of the act one year's notice is required to be issued for nonpayment of premium on any policy "hereafter issued, or renewed." The new policy issued by the defendant company in August, 1912, was a renewal, and we are also of opinion that independently of that a policy is "renewed" whenever the premium is paid.
And further, the "blue note," so called, which was intended and expressed to be a waiver of the statute giving this protection to the policyholders was illegal and without force and effect as a waiver of the protection of the policy, for the very object of the law was to protect the policy-holder who was in straits. The above instruction was erroneous as to plaintiff. The defendant could not evade or repeal the statute by such device.
The second cause of action was for the recovery of $6,000, alleging that under a paper-writing called the "special North Carolina contract," the issuing company agreed to allow the plaintiff a credit each year on his premium of a certain special dividend to be ascertained in the following manner: "The company was to set aside $1 for every contract in force written in the State of North Carolina for 10 years from 1 September, 1901, on which there had been paid during the preceding 12 months one annual or two semiannual or four quarter-annual premiums, and so long as such premiums shall be paid; this fund to be divided among *Page 72 
a group of not exceeding 600 persons (of whom the plaintiff shall be one), and the quotient was to be the special dividend." The plaintiff alleged that the company had concealed and withheld from him large sums of money to which he was entitled by reason of this special dividend contract. In his brief the defendant says: "The company produced in court, at great expense and serious inconvenience to itself, its original cards, books, bookcases, and steel filing cases, consisting of one ton in weight," and says further that its assistant actuary testified that upon a calculation made by him from these original records, plaintiff had received the amount which he was entitled to. The testimony for the defendant was certainly weighty in avoirdupois, but the jury upon all the testimony found that there was a greater weight on the side of the plaintiff, and that the sum of $150 was due him on that issue. This was a question of fact, and the judge below did not disturb the verdict.
There were numerous exceptions, but upon review of the record, the arguments, and the authorities, we find no error entitling the defendant to a new trial.
The plaintiff's assignment of error on his appeal is that on the second issue the court restricted the measure of damages for the wrongful cancellation of his policy of life insurance to the premiums paid, plus interest on each premium from the date of its payment.
This Court has so held where the plaintiff bases his action upon that ground. Braswell v. Ins. Co., 75 N.C. 8; Lovick v. Ins. Co., 110 N.C. 93, and many others cited in Brockenborough v. Ins. Co., 145 N.C. 355, but in those cases it was the defendant who was resisting that method of computation. But, in this case, the plaintiff contends that the defendant having wrongfully canceled the policy, it was its duty to save the plaintiff harmless. Burrus v. Ins. Co., 124 N.C. 9; Herring v. LumberCo., 159 N.C. 382. And that while in an ordinary case the payment of the premiums and interest will put the parties back in statu quo, and enable the insured to purchase another policy at his advanced age, with the increased premium rate. Braswell v. Ins. Co., 75 N.C. 8, in this case the plaintiff contends that owing to his having contracted an incurable disease (tuberculosis) he cannot reinsure at all, and that he can elect to treat the policy as at an end and recover its just value, Trust Co. v. Ins. Co.,173 N.C. 567; that if it should reasonably appear, as in an action for a wrongful death, that the insured would not live exceeding one year taking all the evidence into consideration, then the jury would be justified in finding the value of the policy was its face value, reduced by the interest for one year, and the one premium if they should find that the insured would be reasonably expected to pay another premium. *Page 73 
It cannot be said that an insurance company is at liberty to cancel any of its policies at its pleasure when (as in this case) one of its insured becomes afflicted by an incurable disease and can be excused by refunding the premium and interest. The special contract that paid an annual dividend of more than $25 should also be considered in assessing the measure of damages. Robinson v. Ins. Co., 163 N.C. 415.
It would seem that the present worth of the principal sum of $5,000, reduced by the premiums that the jury find that the insured would reasonably be called on to pay, would be the just measure of compensation for the wrongful cancellation of this policy when the plaintiff's condition is such either by reason of age or physical condition he cannot reinsure — unless the defendant shall elect, as it may, to reinstate the policy upon payment of all arrearages of premiums and interest thereon as the plaintiff offered to do before bringing this action. The policy was taken out as a provision for those dependent upon the insured, and they should be reinstated in their reasonable expectation of which they should not be deprived by the wrongful death of the defendant.
The verdict should be set aside upon the second issue, and a partial new trial granted for the assessment of damages thereon in accordance with this opinion.
On defendant's appeal, No error.
On plaintiff's appeal, New trial on second issue.
BROWN, J., dissenting.