THE OCEAN ACCIDENT AND GUARANTEE CORPORATION, LIMITED, v. PIEDMONT RAILWAY AND ELECTRIC COMPANY.

(Filed 31 March, 1920.)

**1. Insurance—Policies—Contracts—Interpretation.**

The meaning of a policy of indemnity is ascertained by interpreting the entire writing, or from the policy considered as a whole.

**2. Insurance—Employer and Employee—Master and Servant—Policies— Contracts—Indemnity—Interpretation.**

A policy of employer's indemnity insurance based on the premium to be paid as a certain per cent of the payroll of the employees, at certain locations, described the work covered by the policy as "electric light and power companies, operation, maintenance and extension of lines and making service connections," and it was understood and agreed that the policy should not apply to bodily injuries or death caused directly or indirectly by reason of the operation or maintenance of the street railway or its power line or any other work in connection with the street railway or railway power lines, with the further provision, "no work of any nature, not herein disclosed, is done by the assured at the places covered hereby, except the operation of street railways which is not covered hereunder." *Held*, the policy included everything except the operation of street railway, and with that exception, the premium due by the assured is based upon the full payroll.

**3. Insurance — Policies— Indemnity— Caption—"Operation"— Interpretation.**

A policy of employer's indemnity insurance, issued to an electrical corporation giving the location for the work to be done describes the work covered by the insurance as "Operation, maintenance and extension of lines and making of service connections," *Held*, the word "operation" was not used as a mere caption or heading that included only "maintenance and extension of the lines and making service connections," but is itself one of the things to be insured, as if the policy had used the words "the operation of the line as well as maintenance and extension, including the making of service connections."

**4. Contracts—Insurance—Policies—Prior Negotiations—Merger—Equity —Corrections.**

All previous negotiations leading up to the execution of the written policy of insurance indemnifying the employer against loss, merge into the contract as written, and upon its acceptance by the assured it is conclusively presumed to contain all the terms of the agreement for insurance by which the parties intended to be bound, unless or until reformed in equity for fraud, mistake, etc.

**5. Insurance—Policies—Contracts—Ambiguity—Interpretation.**

The insured is entitled to a favorable interpretation of his policy when there is any ambiguity in its language.

CIVIL ACTION, tried before *Calvert, J.,* at January Term, 1920, of ALAMANCE.

Plaintiff, on or about 29 June, 1915, issued and delivered to the defendant, Piedmont Railway and Electric Company, a public liability insurance policy, set out in the record.

The premium to be paid for this liability insurance was nine dollars ($9) per each one hundred dollars ($100) of compensation of said defendant to its employees working at and in the places covered by said insurance, as per its three monthly payrolls. Plaintiff sues for a balance alleged to be due on the premium, and alleges that this three monthly payrolls amounted to five thousand forty-two dollars and forty-five cents ($5,042.45), exclusive of the payroll of the employees of said street railway company, which was specifically excluded because injuries to persons occurring by reason of the operation of the street railway were not covered by the policy.

Defendant does not in terms deny the plaintiff allegation as to the amount of the payroll, but does deny that the payroll of defendant's power plant and light plant, which is run in connection with the power plant, should be included in the payroll on which the premium is based. It was agreed that if the payroll of the power plant is included defendant would owe plaintiff two hundred twenty-two dollars and ninety cents ($222.90), and that if said part of defendant's payroll is not included defendant would owe plaintiff nothing. The parts of the policy itself material to the controversy are as follows:

"The premium is based upon the entire compensation earned, during the policy period, by all employees of the assured not herein elsewhere specifically excluded, engaged in connection with the work described in and covered by this policy."

"4. A full description of the work covered by this policy, the locations of all places where such work is to be done, the estimated compensation of employees engaged therein for the term of this policy, the premium rate or rates and the deposit premium, are given hereunder:

"Description of work covered by this policy: Electric light and power companies, operation, maintenance, and extension of lines, and making service connections.

"Locations of all places where such work is to be done: Alamance and Orange counties, North Carolina.

"Estimated compensation for policy period: See three-monthly premium adjustment endorsement.

"Premium rate per $100 of commission: $9.

"Deposit premium: ........................

"It is understood and agreed this policy shall not apply to bodily injuries or death caused directly or indirectly by reason of the operation or maintenance of the street railway, or its power lines or any other work in connection with the street railway or railway power lines."

(Then follows statement of special work done at all locations mentioned in policy, which are not covered by it, unless a specific amount of compensation; premium rate and deposit are stipulated for.)

"8. No work of any nature not herein disclosed is done by the assured at the places covered hereby, except as follows: Operation of street railway not covered hereunder."

The plaintiff contended that it was entitled to a premium which should be arrived at by taking a percentage of the entire payroll of the defendant.

The defendant contended that the premium was to be a percentage of only a part of its payroll, and was not to include the payroll of its employees engaged where the public was forbidden to go, and where there would be no danger of injury to the public, to wit: The payroll of its employees actually engaged in and about its power house.

If the contention of the plaintiff is ·correct, then the defendant would be due the balance sued for.

If the contention of the defendant is correct, then it has paid plaintiff all sums due.

The trial judge, upon the admitted facts and other evidence which was not disputed, found for the defendant, and found that the defendant had paid all premiums it had contracted to pay,· and there was a verdict and judgment for the defendant.

Plaintiff excepted and appealed.

*W. S. Coulter and A. H. King for plaintiff.*
*John J. Henderson and Parker & Long for defendant.*

WALKER, J., after stating the facts as above: We are required, in construing this policy, to examine the entire writing and to base our conclusion as to its meaning upon the contract as a whole. The language of the instrument is very comprehensive, and, when properly construed, it embraces all kinds of work and operation and all risks arising therefrom, except those in connection with the defendant's street railway, or its power lines. If the exception was intended to cover other operations or other risks, why was it not expressed in the writing. The language of the exception is very clear and explicit, for it provides that, "No work of any nature, not herein disclosed, is done by the assured at the places covered hereby, except the ᵗoperation of street railway, which is not covered hereunder." That states, without the shadow of a doubt, that the policy of insurance includes everything except the operation of the · street railway, otherwise it would have been added in unmistakable language that there was a further exception in regard to the operation of the light and power plant. How this construction can be avoided, under

the rule of law prescribed for ascertaining the meaning of a written contract, we are at a loss to know. The language of the exception is an unerring index to the meaning of the instrument, as it eliminates the *only* thing not insured, and leaves all that is left to be covered by the policy.

Again, section 4 of the "statement" shows what was intended with respect to the risk assured by the plaintiff, and for which the defendant promised to pay the premium as fixed by the contract by the formula set forth therein. It describes the "work" covered by the insurance as "operation, maintenance, and extension of lines, and making of service connections." The word "operation," in that paragraph, was not used as a mere caption or heading that included only "maintenance," and extension of lines, and making service connections, but is itself one of the things intended to be insured, as if it had been expressed, "The operation of the lines as well as the maintenance and extension, including the making of service connections." It was something separate and apart from the other things specified, and not a general or descriptive title in relation to them. This expression, "Operation, maintenance and extension," etc., immediately follows these words in the policy: "A full description of the work covered herein, and the location of all places where such work is to be done, etc., are given hereunder"; so that everything is included except "operation or maintenance of the street railway or the power lines or any other work in connection therewith." There are other reasons which lead us to the same conclusion, that the defendant is liable for the remainder of the premium, claimed by the plaintiff. There is a general rule as to contracts that all prior regulations or agreements are merged in a subsequent written contract touching the same subject-matter, which is now too well established to need the support of cited authority. Therefore, when a policy of insurance, properly executed, is offered by the insurer and accepted by the insured as the evidence of their contract, it must be conclusively presumed to contain all the terms of the agreement for insurance by which the parties intend to be bound. If any previous agreement of the parties shall be omitted from the policy, or any terms not theretofore considered added to it, the parties are necessarily presumed to have adopted the contract as written as the final form of their binding agreement. This was said in *Clements v. Ins. Co.*, 155 N. C., 57, and is well supported by Vance on Insurance, p. 348, cited and approved by us in that case. What, therefore, passed between the parties prior to the delivery of the policy must be taken by us as abandoned at that time, and the policy substituted for it, as the later and final expression of their agreement. It is to be presumed that the defendant read the policy before accepting it, and that the terms stated therein were satisfactory.

GUARANTEE CORPORATION *v.* ELECTRIC CO.

It was said in *Ins. Co. v. Mowry,* 96 U. S., 547, by *Justice Fields:* "The entire engagement of the parties, with all the conditions upon which its fulfillment could be obtained, must be conclusively presumed to be there stated. If, by inadvertence or mistake, provisions were omitted, the parties could have had recourse, for a correction of the agreement, to a court of equity, which is competent to give all needful relief in such cases. But until thus corrected, the policy must be taken as expressing the final understanding of the assured, and of the insurance company." This was approved in *Floars v. Ins. Co.,* 144 N. C., 232; *Wilson v. Ins. Co.,* 155 N. C., 173; *Clements v. Ins. Co., supra.*

The doctrine is well stated, as to all contracts, and especially with reference to policies of insurance, in 9 Cyc., 391, as follows: "Where one accepts a paper which he knows contains the terms of an offer, he will be bound by it, and cannot be heard to say that he did not read it or did not know what it contained. This principle finds frequent application in bills of lading, express receipts, and the like. So where a person receives an insurance policy pursuant to an application, it is his duty to examine it and see those things in respect thereto which are open to ordinary observation by a person of ordinary intelligence, and if he neglects to do so, taking it for granted that what he has received is what he applied for or intended to apply for, such conduct on his part amounts to an acceptance of the policy received, regardless of whether it corresponds to the policy applied for or intended to have been applied for or not, and if it does not so correspond he cannot be heard to complain."

If the defendant desired the policy to be drawn differently, it should have made this known before it was accepted, and rejected the policy unless its wish was complied with. Besides, defendant was retaining a policy, which offered larger protection to it than was claimed, and if any accident had occurred in the operation of the light or power lines, for which it was liable in damages by reason of its negligence, or for other cause, it could have claimed indemnity, and this being so, why should it not pay the corresponding premium. It would seem to be equitably estopped by this fact, though this is immaterial and is not decided. Defendant could have asked for a liberal construction of this policy in its favor and the solution of any doubt as to the meaning of these clauses against the insurance company. We have held that the insured is entitled to a favorable interpretation, when there is any ambiguity in the language of a policy. *Bray v. Ins. Co.,* 139 N. C., 390; *Power Co. v. Casualty Co.,* 153 N. C., 275; Vance on Insurance, 429.

Such a claim for construction surely would have been sustained by us, and the present defendant would have secured a benefit thereby for which it would owe the plaintiff the premium now claimed by it. So

that defendant had a policy for full insurance, excepting the railway operation, and it must, therefore, pay the premium thereon as fixed by the rules of the company.

It follows that in any view the court erred in its decision.

New trial.