ADAMS, J., dissenting.
Civil action to recover the amount of two life insurance policies. Judgment on the pleadings in favor of the plaintiff. Defendant appealed.
The essential facts of this case are as follows:
1. On 11 March, 1919, the defendant issued upon the life of John Underwood two policies of life insurance: No. 225378 for $3,500, and No. 225379 for $1,500; the plaintiff, wife of assured, being named as beneficiary in both policies. On each of these policies two full annual premiums were paid.
2. When the third annual premiums became due, on 11 (539) March, 1921, the assured did not pay said premiums, but executed in respect to said policies two "premium notes," one in the amount of the annual premium due in advance on policy No. 225378, to wit, $149.24, and the other in the amount of the annual premium due in advance on policy No. 225379, to wit, $63.69, with each note containing the following stipulations: *Page 567 
"I understand and hereby agree that neither this note, nor any extension thereof, is given or accepted as a payment of said premium. And I agree that the nonpayment of this note, or any extension thereof at maturity, shall ipso facto lapse said policy, and there will be due the proportionate part of said premium (with interest, less any payments made on said premium) that the time from the date to the maturity of this note, or any extension thereof, bears to the whole time covered by said premium. I also agree that upon nonpayment of this note, or any extension thereof, if said policy should have any reserve value, the company may charge the proportionate part of this note or any extension thereof that may be due as above provided against such reserve value, and any extended insurance value it may have shall be accordingly reduced."
3. Both notes were to be paid within six months, but the maturity date of each was subsequently extended to 26 January, 1922. Neither of said notes, nor any part of the earned premium on either policy was paid at that time.
4. In each of said policies there is a provision for certain nonforfeiture options, available after two full premiums shall have been paid (the policy being then in force, and there being no indebtedness against the same); and, under the said nonforfeiture options, it is provided that if full premiums shall have been paid for two years the assured shall have, as the first option, extended insurance to the extent of one year and 128 days. Such extended insurance is nonparticipating, and not renewable except upon satisfactory physical examination.
5. The assured did not borrow any money from the defendant, and there was no indebtedness against the policies, unless said "premium notes" are to be considered as such.
6. Upon the nonpayment of the note given in connection with policy No. 225378 at its extended maturity date, there being due at that time the sum of $135.26 as the earned premium on said policy, the defendant notified the assured that the said policy had lapsed; and in accordance with the provisions of the note, given in connection therewith, the entire reserve value of the policy, amounting to the sum of $92.75, had been credited upon the earned premium then due, leaving a balance of $42.51 still due on said earned premium. And upon the nonpayment of the note given in connection with policy No. 225379 at its extended maturity date, there being due at that time the sum of (540) $52.96 as the earned premium on said policy, the defendant notified the assured that the said policy had lapsed; and in accordance with the provisions of the note, given in connection therewith, the entire reserve value of the policy, amounting to the sum of $39.75 had been *Page 568 
credited upon the earned premium then due, leaving a balance of $13.21 still due one said earned premium.
7. The assured died 5 May, 1922, before the expiration of the period of extended insurance under the first option above mentioned.
8. Demand for payment of each of the policies having been made and refused, the beneficiary thereunder, plaintiff herein, filed suit to enforce collection. Judgment on the pleadings in favor of plaintiff, and defendant appealed.
The uniform rule of construction with respect to insurance policies and notes given in connection therewith is that if they are reasonably susceptible of two interpretations, the one more favorable to the assured will be adopted. "The policy having been prepared by the insurers, it should be construed most strongly against them." Bank v. Ins. Co.,95 U.S. 673. "The tenets established for the guidance of courts in such matters are well understood, and no one is better established than that in all cases the policy must be liberally construed in favor of the assured, so as not to defeat, without a plain necessity, his claim for indemnity. And where the words used may, without violence, be given two interpretations, that which will sustain the claim and cover the loss should be adopted." Deemer, J., in Goodwin v. Assurance Society,97 Iowa 226.
In Bray v. Ins. Co., 139 N.C. 390, the same rule is stated by Walker, J., as follows: "If the clause in question is ambiguously worded, so that there is an uncertainty as to its right interpretation, or if for any reason there is doubt in our minds concerning its true meaning, we should construe it rather against the defendant, who was its author, than against the plaintiffs, and any such doubt should be resolved in favor of the latter, giving, of course, legal effect to the intention, if it can be ascertained, although it may have been imperfectly or obscurely expressed. This is the rule to be adopted for our guidance in all such cases, and one reason, at least, for it is that the company has had the time and opportunity, with a view of its own interests, to make clear its meaning, by selecting with care and precision language fit to convey it, and if it has failed to do so, the consequences of its failure should not even be shared by the assured, so as to deprive him of the benefit of the contract, as one of indemnity for his loss," citing Grabbs v. Ins. Co.,125 N.C. 389. To like effect are the following cases: Trust Co. v. Ins.Co., 173 N.C. 558; Jones c. Casualty Co., 140 N.C. 262; Rayburn v. Casualty Co., 138 N.C. 379; Kendrick v. Ins. Co., 124 N.C. 315, (541) and authorities there cited.
Applying this principle of construction to the instruments before us, we are of opinion that the judgment in favor of plaintiff should be upheld. *Page 569 
It is conceded that if the assured had simply failed to pay the third premiums when they became due, and not executed the notes in question, both policies would have been in force at the time of his death, under and by virtue of the automatic option of extended insurance as provided for in each policy. But it is contended that the execution of the notes above mentioned has worked a forfeiture of both policies, and that the plaintiff is entitled to take nothing by this action. In dealing with this contention, for convenience, let us consider the policies separately. It is easier to speak of them singly, and what is said in regard to one will apply equally to the other.
Suppose the reserve value of policy No. 225378, on 26 January, 1922, the extended maturity date of the note in question, had been exactly $135.26, the amount of the then earned premium, why would not the extended insurance value of the policy be the same as it was on 11 March, 1921, to wit, one year and 128 days? It will be observed that the taking of this amount of money out of one pocket of the insurance company and putting it back into another did not have the effect of exercising for the assured the option of surrendering the policy and taking its reserve value in cash; for it is provided that this shall only have the effect of a proportional reduction in its extended insurance value. In this respect, the case is unlike Sextonv. Ins. Co., 160 N.C. 598; S. c., 157 N.C. 142, because there the policy was to become "null and void," subject only to its nonforfeiture provisions, upon failure to pay the premium note, and the cash reserve had been pledged to secure the repayment of money borrowed. See last paragraph of opinion, 160 N.C. 600. The present note is not collectible, and never has been. Only the fractional part of the annual premium is what is due and payable, and this has been satisfied in part. The policy was not lapsed until 26 January, 1922. But as the reserve value of the policy at that time was sufficient to pay only 92.75/135.26, or 68.5 per cent of the then earned premium, the extended insurance value is to be reduced 31.43 per cent, which leaves an extended insurance value of 338 days from the date the policy was allowed to lapse. The assured died 5 May, 1922, well within this time. Likewise, the reserve value of policy No. 225379 on 26 January, 1922, being sufficient to pay only 39.75/52.96, or 75.05 per cent of the then earned premium, the extended insurance value of one year and 128 days would be reduced 24.95 per cent, leaving an extended insurance value of one year and 5 days from the date the policy was allowed to lapse.
The case of Ins. Co. v. Tyler, 93 S.E. (Ga.) 415, is distinguishable in that in said case the parties agreed to extend the (542) time of payment of premium, maintaining the policy in full *Page 570 
force in the meantime, and, when paid, receipt was to be issued as if the premium had been duly paid in the first instance. There the company issued a receipt for the note, stating that such were its conditions; but not so here. It is agreed that each note in the present case is not given or accepted as a payment of the premium, and, in the event of its nonpayment at maturity, the note is not collectible, but something else, to wit, the then earned portion of the annual premium on each policy. If this be paid, clearly the life of the policy in each instance is brought up to that date with its full extended insurance value; but if paid only in part with the reserve value of the policy, its extended insurance value is to be reduced accordingly.
The contention of the defendant that the appropriation of the reserve wipes out each policy in toto overlooks the fact that this very reserve is used to pay, not the note given in connection therewith, but a part of the then earned premium on said policy. By the same token that the use of the reserve is said to cancel the policy, the payment of the then earned premium, in whole or in part, brings it back to life with the option of extended insurance, unimpaired or ratably reduced, as the case may be. The defendant ought not to be allowed to switch reserve to premium in such a manner as to defeat the plaintiff's claim for indemnity. Nothing short of clear necessity should drive us to this conclusion; for to take the policy reserve in each instance and credit this amount on the earned premium then due on said policy and still say that you have nothing, smacks of legerdemain. If it be true that in each case the note was not "given or accepted as a payment of said premium," and the policy reserve, as contended by the defendant, is to be applied to the payment of the note, and not to the premium, a different result might follow. But such is not the condition of the bond, when construed in the more favorable light for the assured. 14 R.C.L. 926.
In reply to the contention that the last sentence in the note we are now considering apparently runs counter to this position, it may be said that the present construction is supported by the two sentences next immediately preceding the last one, and that the use of the words "as above provided" in the last sentence should be held to overbalance the contrary construction as contended for by the defendant. Under the seemingly ambiguous provisions of the notes in question, the defendant should not be allowed "to have its cake and eat it too." Arnold v. Ins. Co., 60 S.E. (Ga.) 470; N. Y. Life Ins. Co. v. Van Meter's Admr., 137 Ky. 4.
What was said in Underwood v. Ins. Co., 177 N.C. 333, touching the "blue notes" in that case, in no way conflicts with our present position, for there the notes were quite different and the assured had *Page 571 
borrowed money against the reserve value of the policy and (543) assigned the same as collateral security for its repayment. This is not our case. For like reason, Garland v. Ins. Co., 179 N.C. 67, is also distinguishable.
It has been suggested that the above provisions of the "premium notes" in question are invalid as against the assured because the same have not been submitted to and approved by the Insurance Commissioner of North Carolina, and copies filed in the Insurance Department, as required by C.S. 6312. We prefer to express no opinion upon the merits of this contention, for we think the plaintiff is entitled to recover on another ground, and it is possible that the facts may not be sufficiently disclosed by the pleading to enable us presently to deal with the question satisfactorily. Judgment below was rendered on the pleadings. It was said in Blount v.Fraternal Asso., 163 N.C. 170, that the burden was on the plaintiff, both to allege and to prove a noncompliance with the provisions of this section, as there is a presumption in favor of the validity of contracts. Loyd v.Loyd, 113 N.C. 189. See, also, Robinson v. Life Co., 163 N.C. 415.
After a careful examination of the record, and considering it in the light of the authorities bearing upon the subject, we are of opinion that the judgment of the Superior Court in favor of the plaintiff should be upheld; and it is so ordered.
Affirmed.
ADAMS, J., dissenting.
Cited: Allgood v. Ins. Co., 186 N.C. 421; Bennett v. Ins. Co.,198 N.C. 176; Baum v. Ins. Co., 201 N.C. 448; Green v. Casualty Co.,203 N.C. 771; Conyard v. Ins. Co., 204 N.C. 507; Mitchell v. AssuranceSoc., 205 N.C. 725; Ins. Co. v. Harrison-Wright Co., 207 N.C. 668; Millsv. Ins. Co., 210 N.C. 441; Blake v. Hospital Care Assoc., 214 N.C. 706Felts v. Ins. Co., 221 N.C. 151; Electric Co. v. Ins. Co., 229 N.C. 520;Stallings v. Ins. Co., 229 N.C. 531; Stallings v. Ins. Co., 230 N.C. 305;Motor Co. v. Ins. Co., 233 N.C. 253; Walsh v. Ins. Co., 265 N.C. 639. *Page 572