This was a civil action by plaintiff against the defendant to recover the value of an automobile that was stolen. The plaintiff had a policy of "fire and theft insurance" on the car in the defendant company. The paragraphs of the complaint and answer necessary for an understanding of the case are as follows:
Complaint paragraph:
"1. That on the 10th day of February, 1922, the plaintiff was the owner and in possession of a 1922 model six-cylinder Buick roadster automobile, factory or serial number 692901; motor number 737784; that said automobile and equipment at that time was reasonably worth the sum of $1,606.83.
"2. That on the said date of 10 February, 1922, the plaintiff insured the said automobile with the defendant, through its local agent at Fayetteville, N.C. (the Fayetteville Insurance and Realty Company), for the sum of $1,285, the term of said policy beginning at noon on the 10th day of February, 1922, and ending at noon on the 10th day of February, 1923, said policy insuring said car against fire and theft, and that on said date of 10 February, 1922, the defendant issued and delivered to the plaintiff its policy of insurance, No. 10070, thereon in the sum of $1,285, which policy is now in possession of the plaintiff, and will be produced in court at the trial of this case, and is asked to be taken as a part thereof.
"3. That said automobile was stolen from the plaintiff on 30 October, 1922; that at the time said car was stolen it was parked on the premises of the plaintiff, about twenty steps from his house; that plaintiff left said car parked for a very short while, stepped into the house, and returned within about ten minutes after leaving said car, and it had been stolen."
Answer paragraph:
"1. That the allegations of paragraph 1 of the complaint are admitted, except the statement in said paragraph `that said automobile and equipment at that time was reasonably worth the sum of $1,606.83,' and that as to said allegation the defendants deny the same.
"2. That the allegations of paragraph 2 of the complaint are admitted, and, further answering the said paragraph, the defendant says: That the said policy contained the following stipulation and agreement, to wit: `In consideration of a reduction of premium, it is warranted by the insured that the automobile insured under this policy will be continuously equipped with a locking device known as Johnson lock (approved by the Underwriter's Laboratories of the National Board of Fire Underwriters, and bearing their label). The insured undertakes, during the currency of this policy, to use all diligence and care in maintaining the efficiency of said locking device and in locking the automobile when *Page 417 
leaving same unattended.' That in consideration of said agreement on the part of the insured, there was a reduction of the premium on said policy, and the insured, as the defendant is informed and believes, did equip the said car with a locking device, known as Johnson lock, but that on 30 October, 1922, the day reported by the plaintiff that the said automobile was stolen, the said plaintiff wrote, under date of 23 November, 1922, that his car was left in front of his house, and that upon leaving his car he did not lock the same, and the car was unattended, and that at said time, due to the failure of the plaintiff to lock the said car when leaving it unattended, in accordance with the stipulation and agreement contained in said policy, and the provisions thereof hereinbefore quoted, said car was stolen; and if the said car had been locked, it being equipped with a locking device, known as the Johnson device, that it could not have been stolen, but would have been safe from theft at said time, or if the said plaintiff had left the car attended by some person at said time it would not have been stolen.
"3. In answer to the allegations of paragraph 3, the defendant says that it had been informed by the plaintiff that the said automobile was stolen from the plaintiff on 30 October, 1922; that at the time said car was stolen; it was left by the plaintiff in the street, about twenty feet from his house; that the said car was left unlocked and unattended, and in consequence thereof the said car was stolen; and, as hereinbefore stated in this answer, if the plaintiff had complied with his undertaking and agreement, as contained in the policy, and as hereinbefore quoted, and in view of which he was given a reduction in the premium on the insurance on the said car, the said car would not have been stolen; and, except as herein admitted, the allegations of paragraph 3 are untrue and are denied."
The testimony of Dr. R. A. Allgood was as follows: "I am the plaintiff in this action. On 30 October, 1922, I was the owner of a Buick roadster automobile. Had car insured for $1,295. I purchased car on 10 February, 1922, and paid for car and equipment $1,606.83. The car was stolen from me on 30 October, 1922. It was on Tuesday night, about 7 o'clock. I had been on the hill to make a call, and was due at the Lions Club at 7:30. I came by my house for the purpose of shaving. The back-porch light to my house was on. I thought my folks were at home. I went into my back yard. Drove my car into my private driveway, just off the street, which is in the rear of my house. I drove my car up, not entirely up, beyond or behind the house, but just out of McGilvary Street. The car was just inside my driveway. The driveway is up an incline. I parked the car about forty feet from my house. The light from my back porch made it light where the car was. I thought my mother, wife, and the boy that I had employed working *Page 418 
around the house were at home. I went in the house and found that no one was at home. I went in the bathroom to shave. I heard some cars pass by the house, but I am positive if this car of mine, from where I left it, if the motor had been started I could have heard it. I heard no car start. I shaved, and immediately after I shaved I came out. I was not gone from the car exceeding ten minutes. The street runs by the side of my house — is on a hill. My private driveway is on a slant from McGilvary Street. It is on a slant, and a car will roll from my house to Winslow Street, about three blocks away. I was never more than fifty feet from my car, and was not gone exceeding ten minutes. I reported loss of car to the chief of police or the desk sergeant; also reported loss to Mr. Goudy. When I found the car was gone, I telephoned to the office of Dr. McGougan, with whom I practice, for Dr. McGougan's driver to come after me. I could not find the numbers, and called Mr. Goudy to come down, and we found the numbers. Mr. Goudy works for Dr. McGougan and myself. We reported the loss and numbers within thirty minutes after the car had been stolen. I reported the loss to the company and filed the proof of loss. Car and equipment were worth at least $1,200 when stolen."
On cross-examination, Dr. Allgood said, in part: "Have been practicing physician nine years. Have lived in Fayetteville. The car was equipped with what is known as Johnson locking device. I usually locked it, unless I thought there was no danger and it was safe. The car was not locked at the time it was stolen. When I leave the street to drive in my private driveway I have to go up an incline. It was necessary to put on brakes to hold the car where I left it. It was an easy matter for the car to be moved down my driveway without starting the motor. All you would have to do would be to release the brakes, and it would roll into the street and then down the street probably three blocks, without starting the engine. This was a six-cylinder car — the largest model roadster the Buick people make. It was dark when I went home on the evening of 30 October. No member of my family was at home. I thought they were there. I did not give instructions to any one to watch the car while I was in the house, because it was in hearing distance of me. I expected to find the members of my family in the house. After being in the house not exceeding ten minutes I came out. The car had disappeared, and has not been seen or heard of since, as far as I know. Any one walking along the sidewalk by my house could easily observe the car in the driveway where I left it. The driveway is in the rear of the house, or down by the side of the house. A street runs by the side, and the driveway goes in the rear. I live on a corner, with a street on the front of the house and a street on the side. The driveway goes in parallel with the street on the front of the house. I put the car *Page 419 
in the driveway, the rear of the car being only a few feet from the sidewalk. I was not more than fifty feet away from the car at any time. The weather was cool at that time, and the windows were closed. The back door from the rear porch into the kitchen was open — that is the reason I thought some of my family were there. I shaved in the bathroom. The bathroom, with reference to the kitchen door, is just beyond the kitchen; then there is one door which has a curtain between the kitchen and the bathroom. There is not much automobile driving around my house. The street by there is not a main thoroughfare. I heard two or three automobiles pass by my house while I was in there. I am positive that I could have heard the motor of my car start if it had been started where I left it. The brakes on the car could have been released and it would have rolled some distance from the house without having to start the engine."
The plaintiff then offered in evidence insurance policy No. 10070 — the Hartford Fire Insurance Company of Hartford, Conn., — issued to Dr. R. A. Allgood; amount of insurance, $1,285; rate, $2.29; premium, $29.51; perils, insurance against fire and theft. Term of policy begins noon on the 10th day of February, 1922, and ends at noon on the 10th day of February, 1923. Property covered by insurance, 1922, Buick roadster; factory or serial number, 692901; motor number, 737784. Attached to and made a part of this policy is the following:
NEW YORK UNDERWRITERS AGENCY
A. J. H. Stoddart
Automobile Department Locking-Device Warranty
 Private Pleasure Type Cars Agency at Fayetteville, N.C.
10 February, 1922.
In consideration of a reduction of premium, it is warranted by the insured that the automobile insured under this policy will be continuously equipped with a locking device, known as Johnson lock (approved by the Underwriters' Laboratories of the National Board of Fire Underwriters, and bearing their label).
The insured undertakes, during the currency of this policy, to use all diligence and care in maintaining the efficiency of said locking device and in locking the automobile when leaving same unattended.
Attached to and forming part of Policy No. A U 10070, Hartford Fire Insurance Company, Hartford, Conn.
 FAYETTEVILLE INSURANCE AND REALTY COMPANY, By Charles V. Sharpe, Agent. *Page 420 
At the close of plaintiff's evidence, defendant moved for judgment as of nonsuit. Motion was allowed, and plaintiff excepted and appealed to this Court, and assigned as error "That the court erred in allowing the defendant's motion to nonsuit at the close of the plaintiff's evidence, in that there was sufficient evidence to raise issues to be submitted to the jury, and this constitutes the plaintiff's first and only exception."
The only legal question involved in this case is as to the meaning of the rider on the "fire and theft insurance policy," and if, under all the evidence, taken in a light most favorable to plaintiff, on the motion of nonsuit, there was any evidence to go to the jury.
The court below, on all the evidence, nonsuited the plaintiff. The automobile was continuously equipped with a locking device, known as the Johnson lock. Every provision of the policy was fully complied with, and the only defense the defendant has set up to defeat plaintiff in recovering the value of his automobile is the following clause in the rider to the policy: "The insured undertakes, during the currency of this policy, to use all diligence and care in maintaining the efficiency of said locking device and in locking the automobile when leaving same unattended."
The policy was in full force and effect. The plaintiff, the insured, had used all diligence and care in maintaining the efficiency of the locking device. The only contention that the defendant makes to avoid its liability is, as we construe the language, that plaintiff did not use all diligenceand care in locking the automobile when leaving same unattended.
The language of the rider is ambiguous and not clear. The rider, on its face, indicates it was a form prepared by defendant. If the defendant intended that the automobile should be locked "when leaving same unattended," it could have said so in plain language. The defendant, no doubt, has men skilled to draw its insurance policies and riders. The rider could have been drawn in simple language, well understood by all; for example, "The insured undertakes, during the currency of this policy, to always lock the automobile when unattended."
"While we should protect the companies against all unjust claims, and enforce all reasonable regulations necessary for their protection, we must not forget that the primary object of all insurance is to insure." Grabbsv. Ins. Co., 125 N.C. 399.
Walker, J., in Bray v. Ins. Co., 139 N.C. at p. 393, says: "If the clause in question is ambiguously worded, so that there is any *Page 421 
uncertainty as to its right interpretation, or if for any reason there is doubt in our minds concerning its true meaning, we should construe it rather against the defendant, who was its author, than against the plaintiffs, and any such doubt should be resolved in favor of the latter, giving, of course, legal effect to the intention, if it can be ascertained, although it may have been imperfectly or obscurely expressed." SeeGuarantee Corporation v. Electric Co., 179 N.C. 406; Underwood v. Ins.Co., 185 N.C. 540, and cases cited.
We think a reasonable and righteous interpretation of the rider would mean that the car could be left unattended, but when the owner leaves it unattended he should use "all diligence and care" — that is, all reasonable diligence and care; the pertinent rule being such care as a man of ordinary prudence would exercise under the same or similar circumstances. 9 C. J., p. 1288; Asbury v. R. R., 125 N.C. 568; Drum v.Miller, 135 N.C. 208.
Applying the above rule of law to a just interpretation of the language of the rider, we are of the opinion that the court below, under the facts in this case, erred in granting the nonsuit.
The jury, from the facts and circumstances of this case, and the law as we interpret it, should say whether the plaintiff is entitled to recover, or not.
For the reasons given,
Reversed.