T. A. BAUM v. THE NORTH RIVER INSURANCE COMPANY, OF THE CITY OF NEW YORK, INCORPORATED.

(Filed 7 October, 1931.)

1. **Insurance J e—Incomplete negotiations for sale of property does not violate condition requiring sole ownership by insured.**

   Incomplete negotiations by the insured for the sale of property covered by a policy of fire insurance does not violate the condition of the policy that the insured must be the sole owner, the transaction not having been consummated at the time of the loss covered by the policy, and where there is evidence to this effect the granting of a judgment as of nonsuit is erroneous.

2. **Insurance J a—In this case held: evidence should have been submitted to jury on question of forfeiture of policy.**

   Where a policy of insurance is ambiguous it will be construed in favor of the insured, and forfeitures are not favored by the law, and the policy should be construed with reference to the purpose for which the insurer knew the property was to be used, and *held:* where a policy of fire insurance on a boat provides for forfeiture in case gasoline is kept thereon,

but attached thereto is a writing permitting the use of oil for fuel, and the evidence discloses that a small quantity of gasoline necessary for the starting of the crude oil engine was kept on the boat, and that the loss was not caused by the gasoline catching fire, the evidence should be submitted to the jury, and the granting of defendant's motion as of nonsuit is error.

CONNOR, J., dissents.

APPEAL by plaintiff from *Cowper, Special Judge,* at May Term, 1931, of DARE. Reversed.

*Ehringhaus & Hall for plaintiff.*
*McMullan & McMullan for defendant.*

CLARKSON, J. At the close of plaintiff's evidence the defendant made motion in the court below for judgment as in case of nonsuit. C. S., 567. The court below allowed the motion, and in this we think there was error.

The evidence was to the effect that the plaintiff was the owner of a ferry boat, "Rebecca." After some correspondence with agents of the defendant company, in which plaintiff stated that no gasoline would be used thereon, and that it was a crude oil boat, a policy of insurance in the amount of $3,500 was issued plaintiff for a period of one year, from 6 July, 1926, upon the payment of $105 premium, to cover fire damage to the boat. The plaintiff valued the boat at $6,000 and it was burned 13 May, 1927, a total loss. This policy contained provisions requiring (1) unconditional or sole ownership and (2) prohibiting the keeping, using or allowing of gasoline on the boat. Attached thereto was a rider containing the words "Privilege to use oil for fuel."

First, as to the unconditional or sole ownership:

The policy in controversy is of the North Carolina standard form, C. S., 6436-6437, and among other things, provides, "This entire policy shall be void unless otherwise provided by agreement in writing added hereto, (a) if the interest of the insured be other than unconditional or sole ownership; or (d) if any change other than by the death of the insured take place in the interest, title or possession of the subject of insurance." This and like provisions have at all times been held valid by this Court. *Hardin v. Ins. Co.,* 189 N. C., p. 423; *Johnson v. Ætna Ins. Co., ante,* 362.

In 26 C. J., "Fire Insurance," page 231, part section 282 (b), we find: "A void conveyance or one that is incomplete at the time the property is destroyed does not violate the condition against change of title or interest. This is the rule where a bill of sale or a deed is not delivered, or where the deed is void for failure to designate the grantee."

Page 233, section 285(e) in part: "An executory contract of sale entered into by insured, and not consummated before loss, is not a breach of a condition that the interest of insured shall remain 'sole and unconditional.'"

The testimony of plaintiff was to the effect that the agreement to sell the ferry boat was tentative. Plaintiff was in possession of the boat when it burned, plaintiff's venture was contemplated but not consummated. The agreement in regard to a corporation was *in fieri.* We think plaintiff was, from his testimony, the unconditional and sole owner of the ferry boat "Rebecca" at the time it was burned.

Second, as to prohibiting gasoline:

The policy in its printed form uses this language, "unless otherwise provided by agreement in writing and added hereto, this company shall not be liable for loss or damage occurring . . . while there is kept, used or allowed, on the described premises . . . gasoline. . . ." The rider to the policy contains the typewritten language: "Privilege to use oil for fuel."

The plaintiff testified, in part: "At the time I made this application there was a gasoline tank on the boat. It is common to carry some gasoline on a boat for starting. Yes, there was gasoline on the boat for starting the main engine at the time 1 applied for insurance. That's the only way we had of starting the main engine with gasoline. . . . It was necessary to have enough gasoline to run the blow torches at all times. . . . At the time I made application for this insurance there was no gasoline engine on board the boat. At the time the fire occurred there was. The motor power of the boat was still crude oil, and we had a crude oil engine on it. In addition to that we had a gasoline engine on it and we were carrying a five-gallon can of gasoline. At the time of this fire I should say there was around two and a half gallons, in there. The fire occurred from the back-firing of the gasoline engine. I don't say it set the gasoline on fire, it set something on fire on the bottom of the boat. The fire occurred from the back-firing when the engine went to start it for some purpose—started it for the purpose of pumping the boat out. . . . It did not start from gasoline in the can. The gasoline engine referred to was one that operated the pump on the boat. It was a mere auxiliary engine, only requiring a small amount of gasoline to operate. The pump which we installed was equipped as it was necessary for the proper protection and operation of the boat. It was a small pump engine, put in there to fight fire. It was fueled with gasoline. Except for starting the main engine gasoline was used for no other purpose than as fuel for this small pump engine. Starting the engine with gasoline had nothing in this world to do with the fire. I mean the main

engine. The fuel used in the pump was gasoline. It required no large quantity, a gallon would run her two or three hours. . . . The crude oil engine of the type on the boat could not be started without gasoline priming. Referring to the pump, at the time that pump was installed the language "privilege to use oil for fuel" had been inserted in a rider to my policy for the purpose of putting the pump on. Gasoline is an oil."

In *Allgood v. Ins. Co.,* 186 N. C., at p. 420-1 (30 A. L. R., 652; 119 S. E., 561), the following observations are made: " 'While we should protect the companies against all unjust claims, and enforce all reasonable regulations necessary for their protection, we must not forget that the primary object of all insurance is to *insure.' Grabbs v. Ins. Co.,* 125 N. C., 399. *Walker, J.,* in *Bray v. Ins. Co.,* 139 N. C., at p. 393, says: 'If the clause in question is ambiguously worded, so that there is any uncertainty as to its right interpretation, or if for any reason there is doubt in our minds concerning its true meaning, we should construe it rather against the defendant, who was its author, than against the plaintiffs, and any such doubt should be resolved in favor of the latter, giving, of course, legal effect to the intention, if it can be ascertained, although it may have been imperfectly or obscurely expressed.' See *Guarantee Corp. v. Electric Co.,* 179 N. C., 406; *Underwood v. Ins. Co.,* 185 N. C., 540, and cases cited." *Poole v. Ins. Co.,* 188 N. C., 468; *Rhyne v. Ins. Co.,* 196 N. C., at p. 719; *Mewborn v. Assurance Corp.,* 198 N. C., at p. 160; *Jolley v. Ins. Co.,* 199 N. C., at p. 271.

In Cyc. of Insurance Law, Vol. 4 (Couch), section 966b, p. 3347, the following principle is laid down: "A condition against the use or keeping of gasoline on the insured premises is not broken by its use to an extent necessary to carry on the business for which the insured knew that the property insured was used, and where both parties must have known either that the business insured must be discontinued, or gasoline used therein." (Note) "The keeping upon insured premises of a very small quantity of gasoline for use in an engine used to operate the machinery necessary for the business does not nullify insurance upon the property, although the keeping of gasoline is prohibited by the policy, if premiums were paid and accepted. *McClure v. Mutual F. Ins. Co.,* 242 Pa., 59, 48 L. R. A. (N. S.), 1221, 88 Atl., 921."

In *Bouchard v. Dirigo Mut. Fire, etc., Co.,* 113 Me., 17, L. R. A., 1915D, 187, it is held: "That both clauses should be construed in the light of the entire contract, the situation and character of the property insured and the natural and necessary uses to which it must be put by the owner, and the application of this rule of construction confirms the inference already drawn from the language of the clauses themselves. That the policy is not avoided when the use made of the prohibited

articles or the general use and operation of the property is necessarily incident to the business of the insured, and therefore presumed to be recognized and impliedly permitted by the insurer."

The premium was paid by plaintiff to defendant and the plaintiff contends that the policy was in full force and effect when the fire occurred that destroyed plaintiff's boat, which was valued at $6,000. The amount sought to be recovered in this action is $3,000 (reduced to give jurisdiction to State court). Law and equity abhors a forfeiture. To make void a policy like the present, the language of the provision in the policy and the rider in controversy, must be free from ambiguity. The provision in the policy and rider must also be construed in connection with the purpose of the business for which the insurer knew the property insured was used. From the testimony of plaintiff the matter should have been left to a jury. For the reasons given, the judgment below must be

Reversed.

CONNOR, J., dissents.