FRANK T. DUDLEY v. THE SOVEREIGN CAMP OF THE WOODMEN OF
THE WORLD, OMAHA, NEBRASKA.

(Filed 1 November, 1933.)

1. **Insurance J b — Insured held entitled to payment of premiums out
of cash value of policy under policy provisions in this case.**

Where a policy of life insurance is issued to plaintiff, and sixteen years
thereafter another policy is issued to plaintiff in lieu of the former policy,
the second policy carrying a much higher premium rate because of the

advanced age of the plaintiff, and providing that the nonforfeiture values of the second policy should be computed as of four years prior to the date of its issuance, and further providing that after thirty-six monthly installments of premiums had been paid the insurer, without action by the insured, would apply the cash value of the policy to the payment of premiums if necessary to keep the policy in force: *Held*, the provision as to the application of the cash value of the policy to the payment of premiums will be enforced as of the date provided on the face of the policy for the computation of the nonforfeiture values, and plaintiff was entitled to have the cash value computed and applied to payment of premiums after thirty-six months from such date, and not as of the date of the actual issuance of the policy as contended by insurer.

**2. Insurance E b—**

Where a policy of insurance is ambiguous and reasonably susceptible of two reasonable interpretations, it will be construed in favor of the insured.

APPEAL by defendant from *Grady, J.,* at May Term, 1933, of PITT. Affirmed.

The court below rendered the following judgment: "This cause came on to be heard at Greenville, N. C., during the May Term, 1933, upon motion by the parties for judgment upon the pleadings. It was admitted by the defendant that the plaintiff was totally and permanently disabled within the contemplation of a certain insurance policy issued to him by the defendant, and the only question to be determined was whether or not the plaintiff was barred of his rights under the facts as alleged, and the contract of insurance which includes the constitution and by-laws of the defendant corporation.

It was admitted that on ... May, 1913, the defendant issued to the plaintiff a policy of insurance, No. 27976, dated 12 May, 1913. It was admitted that on 5 August, 1929, pursuant to an application made by the plaintiff, the defendant issued to the plaintiff another policy, in lieu of the former, said new certificate or policy being No. RW-914445-L. Said new policy was exhibited to the court and is made a part of this finding of fact.

Said new policy provides upon its face that 'The nonforfeiture values shall be computed as if this certificate had been issued on 1 July, 1925.'

Said policy also provides that after thirty-six monthly installments or premiums have been paid, the defendant will, without any action on the part of the plaintiff, advance as a loan to him the amount of the monthly payments required to maintain said certificate in force, from month to month, until such time as the accumulated loans, together with compound interest thereon, at the rate of five per cent, per annum shall, equal the cash value of the said policy; and at the expiration thereof, if the plaintiff did not pay said monthly premiums the policy was to become null and void.

It is also provided in the policy that after the same shall have been in force for 12 months, and the insured was less than 60 years of age, and became totally and permanently disabled, the company would pay to him one-half of the face of said policy, which would be $500.00. It was admitted that he was under 60 years of age, and that he was totally disabled.

The policy had been in force more than three years, if dated from 1 July, 1925, as stipulated, and the cash value of the policy, computing the same from said date (1 July, 1925) would have been sufficient to pay the premiums on the same up to such time as would entitle the plaintiff to recover in this case.

All of the two policies in question, the constitution of the defendant, its by-laws, and the application for said policy and all documents referred to in the pleadings are made a part of this judgment and findings of fact.

Under the statement of facts and admissions, the court is of the opinion that the plaintiff is entitled to recover of the defendant, and it is now, adjudged that the plaintiff have and recover of the defendant the sum of $500.00, with interest thereon at the rate of six per cent per annum from 15 February, 1932, and the costs of this action to be taxed by the clerk, provided he surrenders said policy for cancellation as therein provided."

The defendant excepted and assigned error to the judgment as signed and appealed to the Supreme Court.

*S. J. Everett* for plaintiff.
*Albion Dunn* for defendant.

CLARKSON, J. Upon the pleadings, admission and testimony, the plaintiff contended that he was entitled to have the loan value applied to the payment of his installments, and contended that the date of issue of the new certificate for the purpose of cash surrender, paid-up, and extended insurance, and loan values were available on and after 36 months, or 3 years, 1 July, 1925, and that, therefore, he had sufficient available loan value in his certificate to pay the installments due prior to proofs of disability furnished the Sovereign Camp.

On the other hand, the defendant contended, upon the pleadings, admissions and evidence, that the cash surrender, loan value, and paid-up and extended insurance were only available to the plaintiff after thirty-six monthly payments had been made on the new certificate, and that the date of issue, for the purposes of cash surrender, loan value, paid-up and extended insurance was 5 August, 1929, and that, therefore, the plaintiff became suspended, and his policy null and void when plaintiff failed

to pay the installment due in August, 1931. We think the plaintiff's contention is correct, and there was no error in the judgment of the court below.

The question involved: Did the court commit error in holding that the nonforfeiture values and automatic premium loan, referred to in the certificate of insurance, were available on and after 1 July, 1928 (3 years from 1 July, 1925), and in refusing to hold that such automatic premium loan value was available only after 36 monthly payments had been made on the new certificate after the date of its issuance, to wit, 5 August, 1929? We think the interpretation of the court below correct.

In Richards on the Law of Insurance, part sec. 74, at pp. 114-115 (4th ed. 1932), the following principle is found: "The assured ordinarily has no part in the preparation of the policy. No rule of interpretation of an insurance contract is more firmly embedded than that which declares that where the language of the policy is without violence susceptible of two interpretations, one of which being that contended for by the insured, it should be most strongly construed against the insurer for the language is that of the insurer."

In *Thompson v. Phoenix Ins. Co.,* 136 U. S., 287, 34 L. Ed., at p. 297, we find: "If a policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured. This rule, recognized in all the authorities, is a just one, because these instruments are drawn by the company. *First Nat. Bank v. Hartford F. Ins. Co.,* 95 U. S., 673, 678 (24: 563, 565)." *Allgood v. Ins. Co.,* 186 N. C., 415; *Baum v. Ins. Co.,* 201 N. C., 445, S. c., 204 N. C., 57.

The same principle has been set forth in this jurisdiction in *Bray v. Ins. Co.,* 139 N. C., 390 (393), as follows: "If the clause in question is ambiguously worded, so that there is any uncertainty as to its right interpretation, or if for any reason there is doubt in our minds concerning its true meaning, we should construe it rather against the defendant, who was its author, than against the plaintiffs, and any such doubt should be resolved in favor of the latter, giving, of course, legal effect to the intention, if it can be ascertained, although it may have been imperfectly or obscurely expressed. *Grabbs v. Ins. Co.,* 125 N. C., 389."

In the face of the certificate, on page 1, we find: "This certificate is issued and accepted with the express agreement that the provisions and benefits contained on this and the three succeeding pages hereof, and in any authenticated riders attached hereto, form a part of this contract as fully is if recited over the signatures affixed. *The nonforfeiture values shall be computed as if this certificate had been issued on the first day of July, 1925.* Issued at Omaha, Nebraska, this 5 August, 1929. (Signature printed) Sovereign Commander." Then there are special provisions

and conditions on other pages of the certificate. The above in *italics* seems to be an exception to special provisions and conditions as to when the "nonforfeiture values" shall be computed. Then again, the last paragraph on page 2 of the certificate reads as follows: "The cash loan, paid up and extended insurance values shall not become available until three years from the date of issue, as set forth on page 1 hereof." A reasonable interpretation would indicate this to be from 1 July, 1925. On page 2 of the certificate, we find: "3. *Automatic Premium Loan.* After thirty-six monthly payments on this certificate shall have been paid, if any subsequent monthly payment be not paid on or before its due date, and if the member has not, prior to such due date, selected one of the options available under the nonforfeiture provisions of this certificate, *the association will, without any action on the part of the member, advance as a loan to the said member the amount of the monthly payments required to maintain this certificate in force from month to month until such time as the accumulated loans, together with compound interest thereon at the rate of five per cent per annum, and any other indebtedness hereon to the association equal the cash value hereof at the date of default in the payment of the monthly payments,"* etc. Plaintiff contends that under this provision the court should apply the value from 1 July, 1925.

Defendant contends that "After thirty-six monthly payments of this certificate shall have been paid," means from the issuance of the certificate—5 August, 1929, and contends also that in the application for the exchange of the old certificate for the new, is the following: "It is understood and agreed that withdrawal values, if any, on the new certificate shall be available to me only after I have made payments on said new certificate for three full years from date hereof."

It may be noted that these special provisions and conditions are in the general printed form of the certificates issued by defendant, but the Sovereign Commander solemnly wrote in plaintiff's certificate "The nonforfeiture values shall be computed as if this certificate had been issued on 1 July, 1925. Issued at Omaha, Nebraska, this 5 August, 1929." The above is on printed form except the words and figures "First," "July," "25" and "5th," "August" "29" are typed.

In the present certificate it seems that an exception was made by this fraternal organization in favor of plaintiff. The facts may indicate the reason for this: Plaintiff, 32 years old, upon application on 12 May, 1913, was issued insurance certificate No. 27976, for $1,000, rate $1.16 per month, or $13.92 per year, and on 5 August, 1929, upon application for exchange and cancellation he was, as of the age of 44, rate $2.92 per month or $35.04 per year, issued the certificate, sued upon, which states that the nonforfeiture values "shall be computed as if this certifi-

cate had been issued 1 July, 1925," although dated as above, 5 August, 1929. In February, 1932, plaintiff, before 60 years old, became totally and permanently disabled, and furnished proof of same under the certificate and defendant rejected his claim contending that the new insurance certificate was forfeited because plaintiff had not made 36 monthly payments on same since 5 August, 1929. Plaintiff contends that his nonforfeiture value should have been calculated from 1 July, 1925, and the required 36 monthly payments were completed by 1 July, 1928, and that his cash surrender value in September, 1930, was $69.95 (Table A) and that by February, 1932, only $57.13 had been consumed.

The learned judge in the court below held that the nonforfeiture values should be computed from 1 July, 1925, as written in the face of the certificate. We think that this is a reasonable interpretation of the certificate. Any other holding would make this clear language meaningless. Also "the cash loan, paid-up and extended insurance values shall not become available until three years from the date of issue, as set forth on page 1 hereof." A reasonable interpretation would indicate from 1 July, 1925.

This fraternal organization in its settlement it is reasonable to surmise, knowing the heavy monthly increase in plaintiff's premium rate, on exchange of certificates from $1.16 per month to $2.92 per month, taking into consideration everything, made this exception in favor of plaintiff and made the nonforfeiture values to apply as of 1 July, 1925. We see no error in allowing interest from 15 February, 1932, when it is admitted that plaintiff became totally and permanently disabled. For the reasons given, the judgment of the court below is

Affirmed.